**In re OXFORD HEALTH PLANS, INC.**

**No. MDL 1222(CLB).**

United States District Court,
S.D. New York.

Aug. 5, 1998.

**52**

Jay W. Eisenhofer, Grant & Eisenhofer, P.A., Wilmington, DE, Patricia M. Hynes, Steven Schulman, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Martin D. Chitwood, Christi C. Mobley, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, for Plaintiffs.

Robert J. Giuffra, Sullivan & Cromwell, Peter J.J. Beshar, Gibson, Dunn & Crutcher, LLP, Maureen C. Shay, Latham & Watkins, New York City, for Defendants.

Stephen Lowery, & Richard Dannenberg, Lowery Dannenberg Bemporad & Selinger, P.C., White Plains, NY, Liaison counsel.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

On July 15, 1998 this Court issued a Memorandum Decision in this securities class action appointing three co-lead plaintiffs under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4. *See In re Oxford Health Plans, Inc., Securities Litigation,* 1998 WL 400741 (S.D.N.Y. July 15, 1998). Familiarity with the prior opinion is presumed.

Presently before the Court for decision is the motion of the Public Employee's Retirement Association of Colorado ("ColPERA"), one of the selected co-lead plaintiffs, requesting this Court to amend its July 15, 1998 Memorandum Decision, pursuant to Rule 59(e) Fed.R.Civ.P., to include certification under 28 U.S.C. § 1292(b) in order to permit an immediate appeal to the United States Court of Appeals for the Second Circuit. ColPERA lists five questions that it wishes to certify, all of which relate to the discretion of the District Court under the PSLRA to appoint more than one plaintiff and to structure the leadership, within the mandate of the statute, in the manner it perceives to be in the best interest of the proposed class.[1] ColPERA's motion is denied, primarily because such an appeal would not advance the ultimate termination of the litigation, but also because this is not an appropriate question for appellate review and because the Court does not perceive that there is substantial ground for difference of opinion as to the lawfulness of the Order to be entered on the Court's July 15, 1998 Decision.

Section 1292(b) of Title 28 allows for appeal from an otherwise unappealable interlocutory order upon consent of both the District Court and the Court of Appeals. Section 1292(b) provides in relevant part that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may

---

1. The questions ColPERA lists are:

   a. Did the District Court err as a matter of law by reading the statutory phrases in the PSLRA "person or group of persons" and "member or members" as allowing it to appoint unrelated parties as co-lead plaintiffs?

   b. Did the District Court err as a matter of law by appointing three co-lead plaintiffs, a majority of which will control the litigation, when one of those co-lead plaintiffs is an institutional investor with losses nearly twice the size of the other two combined?

   c. Did the District Court err as a matter of law by allowing aggregation of losses of multiple, unrelated plaintiffs in determining the appointment of lead plaintiff?

   d. Did the District Court err as a matter of law by mandating the appointment of an executive committee?

   e. Did the District Court err as a matter of law by finding that Colorado PERA would have a conflict of interest in advancing the legal expenses for the class if it was appointed lead plaintiff?

   *See* ColPERA's Motion, Doc. 21, p. 4.

materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

28 U.S.C. § 1292(b). Thus, the District Court may certify an interlocutory order for appeal if it makes three separate interdependent findings of fact.

The Court must make any such findings, which add to the work of the appellate court, in good faith. The District Court should not lose credibility with the Court of Appeals by certifying interlocutory appeals simply to accommodate requests of counsel who are dissatisfied with or inconvenienced by a ruling made by the District Court, or to entice the Court of Appeals to provide more grist for the law reviews. A trial court must recognize that winners and losers are about equal in number, and that litigators will litigate any issue as far as they can, and will appeal whenever they can do so. *See Filanto v. Chilewich Int'l Corp.,* 147 F.R.D. 39, 40 (S.D.N.Y.1993). The test for certifying an issue is a three part test, and each part of the test must be satisfied.

*I. An Interlocutory Appeal Will Not Advance the Ultimate Termination of the Litigation in This Case*

Recently our Court of Appeals examined the legislative history and purpose of § 1292(b) and held that:

It is a basic tenet of federal law to delay appellate review until a final judgment has been entered. Section 1292(b)'s legislative history reveals that although the law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals. *The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation.*

*Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865–66 (2d Cir.1996) (citations omitted) (emphasis added). The Court of Appeals also noted that for the years 1994 and 1995 a total of 35 motions for leave to appeal under § 1292(b) were filed in the Second Circuit, of which only eight were granted. *Id.* at 866.

Thus, only in rare circumstances is certification of an appeal under § 1292(b) appropriate, and the requirement that an immediate appeal must materially advance the termination of the litigation is strictly construed. *See Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.,* 964 F.2d 85, 88 (2d Cir.1992) (dismissing appeal under § 1292(b) because it was "not clear" that appeal would advance termination of litigation); *In re 105 East Second Street Associates,* 1997 WL 311919 * 2 (S.D.N.Y.1997) (requirement is "strictly construed to preclude appeals that have no clear potential to materially advance the litigation's termination").

In support of its opinion that a § 1292(b) appeal would expedite the resolution of this case, ColPERA merely states that "[a]n immediate appeal from [the Court's] order will materially advance the litigation in this case because this issue is central in determining who will control the litigation, and resolution of this issue will expedite the underlying litigation." ColPERA's Motion to Amend Order p. 6. This Court has already determined which plaintiffs will control the litigation and the case is ready to proceed under that structure. The time required to conclude the litigation is solely a function of the number and extent of the contested issues of fact and law arising out of the underlying merits of the claims and defenses; these do not change with the identity of the lead plaintiffs. It appears to the Court that rather than advancing the litigation, certification would substantially delay it in this case. An immediate appeal is considered to advance the ultimate termination of the litigation if that "appeal promises to advance the time for trial or to shorten the time required for trial." 16 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 3930 p. 432 (2d ed.1996).[2] Because an appeal in

---

2. *See also In re 105 East Second Street Associates,* 1997 WL 311919 * 3 (appeal not likely to ad-

this case would do neither, ColPERA's motion must be and hereby is denied.

## II. Controlling Question of Law

It is unclear whether the number of lead plaintiffs a court may select under the PSLRA presents a controlling question of law. The Court's decision in this case is within the literal wording of the statute. Since the statute is derogatory of the traditional powers of the Court to administer a class action, it should be construed strictly and consistent with its plain meaning. The Order sought to be appealed is not prohibited by the statute, and must therefore be within the Court's discretion to make. No evidence of an abuse of discretion is cited. In any case, this type of discretionary decision is generally inappropriate for appellate review. *See Herold v. Braun*, 671 F.Supp. 936, 937–38 (E.D.N.Y.1987) ("Ordinarily a district court should refuse to certify matters... that lie within its discretion.") (citations omitted); *see also Atlantic City Elec. Co. v. A.B. Chance Co.*, 313 F.2d 431, 434 (2d Cir.1963) (per curiam) ("[T]o permit appellate review of this kind of discretionary discovery order, merely an intermediate step in these complex cases, would thwart rather than effectuate the purpose of 1292(b) to 'materially advance the ultimate termination of the litigation.'") In *Koehler* our Court of Appeals observed that:

§ 1292(b) was not meant to substitute an appellate court's judgment for that of the trial court. In *Link v. Mercedes–Benz of N. America, Inc.*, 550 F.2d 860, 863 (3d Cir.), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), the Third Circuit held that the district court's certification of the class in a class action suit is an inappropriate order for interlocutory appeal because the district court has such broad discretion under Rule 23(c) to revise its class action determination before a final decision on the merits.

*Koehler*, 101 F.3d at 866–67. Because this Court has discretion to revise its lead plaintiff determination, and specifically reserved this discretion in its Memorandum Decision, appellate review under § 1292(b) is not appropriate in this case, regardless of whether ColPERA has presented a "controlling question of law."

Our Court of Appeals has not clearly defined the term "controlling," but has held that "[a]lthough the resolution of an issue need not necessarily terminate an action in order to be 'controlling'...it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir.1990) (citations omitted). Appellate reversal of this Court's decision to select three co-lead clearly would not terminate this action.

Our Court of Appeals has also noted, in dictum, that "a determination that may importantly affect the conduct of an action" could be considered a "controlling question of law." *See In re The Duplan Corp.*, 591 F.2d 139, 148 n. 11 (2d Cir.1978). ColPERA states, without further elaboration, that reversal of this Court's decision "would significantly affect the conduct of this action." ColPERA's Motion, Doc. 21, p. 4. Understanding, as this Court does, that all lead plaintiffs and their counsel are working towards the same result–the greatest recovery for the class consistent with the merits of the claims raised, the defenses asserted and the burdens and risks of litigation–it is unclear to the Court how rearranging the current leadership structure would "significantly affect the conduct of the action."

ColPERA also contends that it has presented a "controlling question of law" because the issues it proposes to certify will have precedential value for other courts attempting to construe the PSLRA. District courts in this circuit have also held that a "controlling question of law" under § 1292(b) is one that "may contribute to the determination, at an early stage, of a wide spectrum of cases." *Department of Economic Dev. v. Arthur Andersen & Co.*, 683 F.Supp. 1463, 1486 (S.D.N.Y.1988); *see also Strougo v.*

vance termination of litigation when it "would not result in the dismissal of any claims or defenses... [n]or would it resolve any other substantially dispositive issue in [the] proceeding") (citing *Pereira v. Aetna Casualty & Sur. Co.*, 921

F.Supp. 1121, 1126 (S.D.N.Y.1996) (certification of appeal under 1292(b) would not advance the termination of the litigation because certain claims "will continue regardless of the disposition of the issue.")).

*Scudder, Stevens & Clark, Inc.,* 1997 WL 473566 * 7 (S.D.N.Y. Aug.18, 1997) (controlling question of law may exist if "the certified issue has precedential value for a large number of cases"); *Pereira,* 921 F.Supp. at 1126 ("a question of law may also be controlling if it substantially affects a large number of cases"); *Genentech, Inc. v. Novo Nordisk A/S,* 907 F.Supp. 97, 99 (S.D.N.Y.1995) (same). As an initial matter, a ruling by our Court of Appeals on the lead plaintiff issue would not "contribute to the determination" of a wide range of cases nor would it "substantially affect" a large number of cases because the lead plaintiff question is a preliminary procedural matter unrelated to the merits. It therefore could not contribute to the *resolution* of any other cases.

In addition, it is unclear to this Court that precedential value alone is sufficient to create a "controlling question of law." District courts have apparently derived this criterion from Judge Friendly's statement in *Brown v. Bullock,* 294 F.2d 415 (2d Cir.1961), that leave to appeal was granted in that case in part because "such a determination was likely to have precedential value for a large number of other suits against directors of registered investment companies, now pending in the Southern District." *Id.* at 417. However, in *Klinghoffer* our Court of Appeals cast some doubt on the precedential value of the *Brown* holding (in the § 1292(b) context) and made it clear that the proper interpretation of "controlling" does not include a requirement that resolution of the certified question have precedential value for a number of pending cases:

> We do not, however, interpret *Brown v. Bullock* as holding that certification is proper only if the certified issue has precedential value for a large number of pending suits. The court in that case did not expressly address the "controlling question of law" requirement, and we do not regard its reference to the precedential value of the issues before it as a restrictive interpretation of that statutory term. Rather, the reference was only one of the reasons provided as justification for acceptance of the appeal... and was an explanation of why the *court was so exercising its discretion.*

> \*   \*   \*   \*   \*   \*

[T]he impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court. But that is not the same as defining a "controlling question of law" in terms of its precedential value. We have not found any circuit court decisions that squarely support plaintiffs' position... Moreover, distinguished commentators have concluded that "[t]he suggestion... that the question must be important to a large number of other suits... is not supported by any statutory purpose" ... Our review of the statute and relevant authorities convinces us that a "controlling question of law" under section 1292(b) need not affect a wide range of pending cases, and we so hold. *Klinghoffer,* 921 F.2d at 24. Thus, while our Court of Appeals has held that a question of law need not affect a wide range of pending cases, nor need it necessarily terminate the litigation, in order to be considered "controlling," it has not yet provided a precise definition of the term "controlling.". *See also Burns, M.D. v. Imagine Films Entertainment, Inc.,* 1996 WL 808065 *2 (W.D.N.Y. Oct.10, 1996) (circuit "has not definitively defined the outer parameters of 'controlling'"). However, this Court need not render a determination as to whether ColPERA has presented a "controlling question of law," because the first and third parts of the 1292(b) standard have not been met in this case.

### III. There Is No Substantial Ground for Difference of Opinion

Finally, there is not "substantial ground for difference of opinion" as to this Court's interpretation of the lead plaintiff provisions of the PSLRA because the Court's ruling is within the plain language of the statute and, thus, in accord with congressional intent. *See Ardestani v. Immigration and Naturalization Serv.,* 502 U.S. 129, 135, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) ("The 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances'... when a contrary intent is clearly expressed.") (citations omitted). This Court is aware of no case holding that the PSLRA

*forbids* the appointment of more than one lead plaintiff. In addition, although the Securities and Exchange Commission ("SEC") took no position, and did not appear before the Court on this motion for § 1292(b) certification, the SEC did concede, in its amicus brief on the prior motion for appointment of lead counsel, that the statute permits more than one lead plaintiff. Counsel for ColPERA made the same concession at the hearing on the motion for § 1292(b) certification.[3] Thus, while courts interpreting the statute have exercised their discretion in selecting the number of lead plaintiffs, there appears to be no ground for difference of opinion as to whether the plain language of the statute permits such discretion.

## IV. Conclusion

For the reasons set forth above, ColPERA's motion is denied.

SO ORDERED.

---

**3.** Both the SEC and ColPERA contend that the statute permits the aggregation of losses for purposes of selecting a lead plaintiff *only* when the plaintiffs *voluntarily* agree to do so. There is no basis in the statute or its legislative history to support such a distinction.