Jack LERNER, derivatively on behalf EA Industries, Inc., Plaintiff,

v.

MILLENCO, L.P., Defendant.

No. 97 CIV. 9226(SAS).

United States District Court, S.D. New York.

Sept. 10, 1998.

Jeffrey S. Abraham, Law Offices of Jeffrey S. Abraham, Jack Fruchter, Mitchell M.Z. Twersky, Fruchter & Twersky, New York City, for Plaintiff.

Theodore Altman, Jon D. Kaplon, Gordon, Altman, Butowsky, Weitzen, Shalov & Wein, New York City, for Defendant.

## MEMORANDUM OPINION

SCHEINDLIN, District Judge.

In an Opinion dated August 12, 1998, this Court denied defendant's motion to dismiss, allowing plaintiff to proceed with his claim under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), based on defendant's ownership, together with others, of more than ten percent of EA common stock. *Lerner v. Millenco, L.P.*, 23 F.Supp.2d 337, (S.D.N.Y.1998). However, the Court rejected plaintiff's theory of liability based on defendant's individual beneficial ownership of more than ten percent of EA common stock because it determined that EA Convertible Debentures, which were convertible at the lesser of two rates—one fixed, one floating, are "derivative securities" for purposes of § 16(b).[1] *Id.* at 341–42. Plaintiff now moves for reconsideration of that decision pursuant to Local Rule 6.3, arguing that the Court erred in its determination that EA Convertible Debentures are derivative securities. In the alternative, plaintiff moves for an order pursuant to 28 U.S.C. § 1292(b) certifying the issue for interlocutory appeal.

### I. Motion for Reconsideration

A party seeking reconsideration must demonstrate that the Court overlooked controlling decisions or factual matters "that might materially have influenced its earlier

---

1. While the acquisition of a derivative security is deemed a "purchase" of the underlying stock under § 16(b), the conversion of that derivative security is not. *See* 17 C.F.R. § 240.16a–1(c)(6); 17 C.F.R. § 240.16b–6(b). Plaintiff, of course, argues that EA Convertible Debentures should not be classified as "derivative securities," and thus that defendant's May 1997 conversion of the debentures constitutes a "purchase" of EA common stock, which can be matched with plaintiff's May 1997 sale of EA common stock.

decision." *Anglo American Ins. Group v. CalFed, Inc.,* 940 F.Supp. 554, 557 (S.D.N.Y. 1996) (quoting *Morser v. AT & T Info. Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989)); *see also Frankel v. ICD Holdings S.A.,* 939 F.Supp. 1124, 1126 (S.D.N.Y.1996). Local Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court." *Wishner v. Continental Airlines,* 94 Civ. 8239, 1997 WL 615401, at *1 (S.D.N.Y. Oct.6, 1997); *Ades v. Deloitte & Touche,* 843 F.Supp. 888, 892 (S.D.N.Y.1994).

■ In his motion for reconsideration, plaintiff fails to identify any controlling decision or factual matter that was overlooked by the Court. Nevertheless, I will respond to the policy argument which plaintiff advances in support of his contention that convertible debentures with a "hybrid" pricing feature should not be classified as derivative securities under § 16(b). Plaintiff argues that "the floating rate provision contained in EA's convertible debentures could allow statutory insiders such as Millenco to sell EA common stock short thereby driving down its price and allowing Millenco to obtain more shares of EA common stock in converting the debentures." Plaintiff's Motion for Reconsideration ("Pl.'s Mem.") at 4–5. By way of explanation, plaintiff cites to a *New York Times* article which describes an unscrupulous practice whereby investors take a great number of short positions in a thinly traded stock, causing the stock price to fall, and then convert their preferred shares for large amounts of the company's common stock. *Id.* at 5.

■ Plaintiff is correct that if debentures with "hybrid" pricing features, like EA Convertible Debentures, are deemed derivative securities, then § 16(b) could not prevent such a scheme, because converting the debentures to common stock would not be considered a "sale" or "purchase" under the statute. *See* 17 C.F.R. § 240.16b–6(b); *see generally Lerner,* 23 F.Supp.2d at 342. Section 16(b), however, was not intended as a panacea for all the maladies of the market. Rather, the statute was directed at a specific evil: "the realization of short-swing profits based upon access to inside information." *Magma Power Co. v. Dow Chem. Co.,* 136 F.3d 316, 320 (2d Cir.1998) (quoting *Kern*

*County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 594, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973)). In the scheme described in the *New York Times* article, investors reap a profit by manipulating the price of the securities, not by making use of inside information. Because § 16(b) is not concerned with market manipulation, such conduct does not contravene the statute's purpose. Plaintiff's policy argument is therefore rejected and the motion for reconsideration is denied.

## II. Motion for § 1292(b) Certification

■ In the alternative, plaintiff moves pursuant to § 1292(b) for certification of the issue whether EA Convertible Debentures are "derivative securities" for purposes of § 16(b). Section 1292(b) provides that a district judge shall only certify for interlocutory review an order that "[1] involves a controlling question of law [2] as to which there is a substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § ˙ 1292(b). The Court of Appeals has emphasized the importance of the third consideration in determining the propriety of an interlocutory appeal: "[Section 1292(b)] is a rare exception to the final judgment rule that generally prohibits piecemeal appeals. The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863 (2d Cir.1996); *see also Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.,* 964 F.2d 85 (2d Cir.1992) (expressing disapproval of § 1292(b) certification where it was "not clear" that disposition of certified issues would materially advance ultimate determination of the case); *In re Oxford Health Plans, Inc.,* 182 F.R.D. 51 (S.D.N.Y.1998) ("requirement that an immediate appeal must materially advance the termination of the litigation is strictly construed").

Plaintiff contends that if he were to prevail on the "hybrid" debenture question, then he would be entitled to *partial* summary judgment on his § 16(b) claim based on defendant's individual ownership of more than ten

percent of EA common stock. *See* Pl.'s Mem. at 6.[2] While plaintiff is correct, this has little meaning. Plaintiff is also pursuing disgorgement of profits on matched purchases and sales occurring prior to February 10, 1997, the date on which Millenco, individually, became a beneficial owner of more than ten percent of EA common stock. This theory of recovery is based on defendant's membership in a group that may have owned more than ten percent of EA common stock. In order to recover under this theory, plaintiff must *prove* that defendant agreed with one or more other persons "to act together for the purpose of acquiring, holding, voting or disposing of [EA Convertible Debentures]," and that the group's members, together, owned more than ten percent of EA common stock at the time that defendant engaged in the purchases and sales at issue. *See* 17 C.F.R. § 240.13d–5(b)(1). Thus, even if he prevails on the post-February 10, 1997 transactions, plaintiff still intends to litigate those occurring prior to that date. Under those circumstances, deciding the post-February 10, 1997 issue will have no effect on terminating the litigation. Plaintiff has therefore not satisfied the difficult test for certification under § 1292(b).

### III. Conclusion

For the aforementioned reasons, plaintiff's motions for reconsideration and for certification pursuant to § 1292(b) are denied.

SO ORDERED:

---

**2.** Plaintiff is right. Defendant does not dispute that it was, individually, a beneficial owner of more than ten percent of EA common stock as of February 10, 1997. If defendant's May 1997 debenture conversions are purchases of common stock, then they can be matched with defendant's May 1997 sales of common stock. Any profits on these transactions would have to be disgorged.