**TRANSPORT WORKERS UNION OF AMERICA, LOCAL 100, AFL–CIO; Roger Toussaint, as President of Transport Workers Union of America, Local 100, AFL–CIO; Transport Workers Union of America, AFL–CIO; Sonny Hall, as President of Transport Workers Union of America, AFL–CIO; Amalgamated Transit Union, Local 726, AFL–CIO; and Angelo Tanzi, as President of Amalgamated Transit Union, Local 726, AFL–CIO, Plaintiffs,**

v.

**NEW YORK CITY TRANSIT AUTHORITY and Manhattan and Bronx Surface Transit Operating Authority, Defendants.**

No. 02 Civ. 7659(SAS).

United States District Court, S.D. New York.

Feb. 25, 2005.

Walter M. Meginniss, Margaret A. Malloy, Gladstein, Reif & Meginniss, L.L.P., New York City, for Plaintiffs.

Richard Schoolman, Baimusa Kamara, Office of the General Counsel, New York City Transit Authority, Brooklyn, NY, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

The plaintiff labor unions (collectively, "the Unions") brought this action challenging certain medical inquires made in connection with employee sick leave by the New York City Transit Authority and its

subsidiary the Manhattan and Bronx Surface Transit Operating Authority (collectively, "the Authority"). Following a bench trial, the Court issued an Opinion & Order dated October 12, 2004 ("the October 12 Order"). In that Order (familiarity with which is presumed) the Court held that the Authority's inquiries were within the scope of the prohibited medical inquiries and examinations provision of the Americans with Disabilities Act.[1] The Court further held that the Authority's asserted business necessity of maintaining workplace safety was sufficient to justify the inquiries with respect to bus operators, and possibly other groups of employees, to be determined at a later date; and that the Authority's asserted business necessity of curbing sick leave abuse was sufficient to justify the inquiries only with respect to employees on the Authority's "sick leave control list." Both the Unions and the Authority now request that the Court certify aspects of its ruling for immediate appeal, pursuant to section 1292 of Title 28 of the United States Code.[2]

## II. LEGAL STANDARD

■ It is a "basic tenet of federal law to delay appellate review until a final judgment has been entered."[3] However, a court, in its discretion, may certify an interlocutory order for appeal if the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[4]

■ When considering certification, district courts must carefully evaluate whether each of the above conditions are met.[5] Courts place particular weight on the last of these three factors: whether immediate appeal will materially advance the ultimate termination of the litigation.[6] "An immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to advance the time for trial or to shorten the time required for trial.'"[7]

■ The Second Circuit has urged courts "to exercise great care in making a § 1292(b) certification."[8] "[O]nly 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a

---

1. 42 U.S.C. § 12112(d)(4) ("the ADA prohibition").

2. Additionally, the Unions move for entry of judgment pursuant to Federal Rule of Civil Procedure 54(b), dismissing the Unions' claim that the Authority's application of the inquiries to bus operators is unlawful. Because I find that the October 12 Order is appropriate for certification, I need not address the Unions' motion.

3. *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir.1996).

4. 28 U.S.C. § 1292(b).

5. *See, e.g., Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F.Supp.2d 488, 491 (S.D.N.Y. 2001) (denying motion for certification where defendant could not demonstrate substantial grounds for difference of opinion as to controlling questions of law).

6. *See Koehler*, 101 F.3d at 865–66 ("The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."); *Lerner v. Millenco, L.P.*, 23 F.Supp.2d 345, 347 (S.D.N.Y.1998) ("The Court of Appeals has emphasized the importance of the third consideration in determining the propriety of an interlocutory appeal.").

7. *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51 (S.D.N.Y.1998) (quoting 16 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3930 p. 432 (2d ed.1996)).

8. *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir.1992).

final judgment.' " [9]  Indeed, even where the three legislative criteria of section 1292(b) appear to be met, district courts have "unfettered discretion to deny certification" if other factors counsel against it.[10]

## III. DISCUSSION

██  This is the unusual case in which certification is appropriate.  An interlocutory appeal would be in the interests of all parties, and would ensure judicial economy.

The outcome of this litigation is almost entirely determined by a single, recent Second Circuit case, *Conroy v. New York State Dep't of Correctional Services*.[11] *Conroy* dealt with a novel issue of law: the application of the ADA prohibition to an employer's request for a general diagnosis from employees taking sick leave.[12]  Confronted with an incomplete record, the *Conroy* court remanded for further factual development, and offered, in dicta, general guidelines for the district court to consider in determining whether the employer's inquiries were justified.  There has been no further decision in that case.  There are still, therefore, substantial questions as to how *Conroy'* s guidelines should be applied to a fully developed factual record.  Moreover, if the Circuit accepts an appeal from the October 12 Order, it will be that

court's first opportunity to rule on this issue in the presence of a developed record;  the Circuit may qualify, expand, or firmly endorse the dicta in *Conroy*.

I have heard evidence and issued a final decision, on a full factual record, on two discrete issues:  *first*, that the asserted business necessity of curbing sick leave abuse is sufficient to justify the policy *only* with respect to a group of employees on the sick leave control list, and *second*, that safety considerations justify the policy with respect to bus operators.  There are nearly seventy other job titles at the Authority;  extensive further discovery and weeks of trial may now be required to determine the safety-relatedness of each job title.  The October 12 Order, following the guidelines set forth in *Conroy*, established the legal principles the Court will apply to this case, in the absence of further guidance from the Court of Appeals.  All that remains is the application of those principles to dozens of similar factual scenarios.[13]  This could result in a serious waste of resources, depending on how the Court of Appeals rules on the inevitable appeal.

The Second Circuit has emphasized that "section 1292(b) authorizes certification of *orders* for interlocutory appeal, not certification of *questions* . . . .  [However,] in cer-

---

**9.** *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).

**10.** *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F.Supp.2d 139, 162–63 (E.D.N.Y.1999) (assuming the statutory criteria were met but nonetheless denying certification).

**11.** 333 F.3d 88 (2d Cir.2003).

**12.** The *Conroy* court noted the novelty of the claim.  *See id.* at 95 ("Our court has not previously interpreted this provision.  Indeed, relatively few courts have addressed [ ] this ADA prohibition.").  *Conroy* appears to have been the first case anywhere to apply the ADA

prohibition to a general, sick-leave related policy similar to the one at issue here;  as the court observed, "[c]ourts have generally addressed these issues in cases where an employer sought an examination from an individual employee, who had particularly severe attendance problems or had previously demonstrated an inability to perform required job functions."  *Id.* at 98 (citing cases).

**13.** Importantly, no further factual development will take place (unless directed by the Court of Appeals on remand) on the issue of the business necessity of curbing sick leave abuse, or on the business necessity of safety as applied to bus operators.

tifying an order for interlocutory review it is helpful if the district judge frames the controlling question(s) that the judge believes is presented by the order being certified." [14] The parties have proposed various issues for appeal.[15] Only the first of these issues is suitable for certification.[16]

The Authority seeks to appeal my holding that the business necessity of curbing sick leave is sufficient to justify the policy only with respect to employees with truly egregious attendance records (*i.e.*, employees on the sick leave control list), and not with respect to all employees. My holding was based on *Conroy*'s statement that:

> [the employer's] stated goal of weeding out that small group of employees who consistently maintain attendance records that are far below [the employer's] standards is probably consistent with business necessity case law. Nonetheless, if the policy ultimately affects a class of so-called attendance abusers that is much larger than that small group of employees with truly egregious attendance records, or if the policy is applied inconsistently, [the employer] will find it more difficult to prove business necessity.[17]

Following these guidelines, I held that, while the Authority had proven the existence of a level of sick leave abuse sufficiently "significant and troubling" to justify a narrowly-drawn policy aimed at curbing sick leave abuse, the Authority

could not, absent a showing that "such abuse is so widespread as to be the norm among the Authority's employees" and that the Authority has a "reasonable basis to suspect that [ ] broad swathes of its employees are sick leave abusers," apply the policy to employees other than a defined class of employees with truly egregious attendance records.[18] The Authority argues that the showing of "significant and troubling" levels of abuse is sufficient to justify the application of the policy as to all employees, given the difficulty of making a higher showing and the importance of deterring sick leave abuse. Further, the Authority argues that its public service functions and its duty to conserve public funds should be taken into account when considering the level of sick leave abuse necessary to justify the universal application of its policy.

The question of the level of sick leave abuse an employer must show to justify making the challenged inquiries of all employees, and the extent to which public purposes and duties such as those of the Authority may affect the analysis, is a controlling issue of law. "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." [19] If the Court of Appeals reverses, holding that the purpose of curbing sick

---

**14.** *Isra Fruit, Ltd. v. Agrexco Agricultural Export Co.*, 804 F.2d 24, 25 (2d Cir.1986) (original emphasis).

**15.** The Unions have raised no objection to the Authority's proposed issues of law. The Authority objects to the Unions' proposed issue of law.

**16.** Although I find that the majority of these issues do not merit certification, the Court of Appeals may wish to take the opportunity to address those questions, as that Court's review is not limited to the questions certified

by the district court, but rather extends to "any issue fairly included within the certified order." *United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n*, 197 F.3d 631, 636 (2d Cir.1999).

**17.** *Conroy*, 333 F.3d at 101.

**18.** *Transport Workers Union, Local 100 v. New York City Transit Auth.*, 341 F.Supp.2d 432, 441 (S.D.N.Y.2004).

**19.** *Klinghoffer*, 921 F.2d at 24.

leave abuse justifies the policy with respect to all employees, the litigation will end: there will be no need to determine which groups of employees may *also* be subject to the policy because of their safety-sensitive roles. Moreover, this case raises a novel issue of great importance to many other employers. This case may therefore have considerable precedential value.[20]

■ Although "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion"[21] there is a substantial ground for difference of opinion as to this question. *Conroy* leaves this question open, providing only general guidance, in dicta, to the effect that an inquiry directed at all employees will be "more difficult" to justify. The proper interpretation of *Conroy*'s guidelines is open to reasonable dispute. The case law on the business necessity standard, developed largely in the context of inquiries directed at specific employees, provides little guidance on the showing necessary to support a generally applicable policy such as the one at issue here. Although I have rejected the Authority's arguments on this point, they are certainly not without appeal: the concerns underlying the Authority's policy are weighty ones. Furthermore, the Court of Appeals may find it necessary to qualify or develop *Conroy*'s dicta to take into account the Authority's concerns.

Finally, as noted, the resolution of this issue will materially advance the termination of this case. If the Court of Appeals reverses my holding, it will obviate the need for protracted and expensive litigation on the issue of the safety-sensitive nature of dozens of job titles. I therefore find that this question is appropriate for certification.

■ The remaining proposed issues are not appropriate for certification. *First,* the Authority seeks to appeal my holding that its inquiries fall within the scope of the ADA prohibition because they " 'may tend' to reveal disabilities or perceived disabilities."[22] Claiming that plaintiffs have failed to show that the inquiries have ever in fact revealed a disability, the Authority seeks to appeal the following issue: whether *Conroy*'s "may tend" standard may be met when there has been no showing that the inquiries at issue have ever revealed a disability, although the inquiries in question have been made "at least 2 million times in connection with some 1 million sick leave applications submitted by some 33,000 employees of that employer."[23] There is no substantial ground for difference of opinion as to this issue. *Conroy* unequivocally holds that the relevant question is whether an inquiry *may* reveal a disability, or even a condition that *"may* give rise to the perception of a disability."[24] This standard is in keeping with the prophylactic purpose of the ADA prohibition. Moreover, the Authority's argument is contrary to the factual record. There is evidence in the record that employees have disclosed conditions including cancer, HIV, and asthma.[25]

---

**20.** Although a question of law may be controlling without having such precedential value, the Court of Appeals may consider "the impact that an appeal will have on other cases ... in deciding whether to accept an appeal." *Id.*

**21.** *Flor v. BOT Fin. Corp.,* 79 F.3d 281, 284 (2d Cir.1996).

**22.** *Transport Workers Union,* 341 F.Supp.2d at 447 (quoting *Conroy,* 333 F.3d at 95).

**23.** The Authority's Memorandum of Law in Support of Certification at 9.

**24.** *Conroy,* 333 F.3d at 95 (emphasis added).

**25.** *See* Deposition of Paul Hutchins, Transit Authority Senior Director of Labor Productiv-

*Second,* the Authority seeks to appeal my holding that the Unions are not estopped from challenging the Authority's inquiries, on the ground that the inquiries have been part of the parties' collective bargaining agreements since before the enactment of the ADA. Again, there is no room for substantial difference of opinion on this issue. The mere fact that an issue is difficult and contested is not sufficient to show a substantial ground for difference of opinion: section 1292 "was not intended as a vehicle to provide early review of difficult rulings in hard cases." [26] Certification is to be reserved for the exceptional case in which the law is fundamentally uncertain.[27] My ruling was based on well-established principles of law, and the Authority has offered no persuasive argument that there is a substantial ground for difference of opinion as to this issue.[28]

*Finally,* the Unions seek to appeal the following question: "whether the [Authority's sick leave policy] is a narrowly tailored-inquiry into employees' abilities to carry out their job-related functions and is no broader or more intrusive than necessary." [29] The Unions' argument on this issue is somewhat ambiguous. However, no matter how the Unions' argument is construed, the question is inappropriate for certification.

Insofar as the Unions are arguing that a request for a general diagnosis may *never* be justified by the business necessity of determining employees' ability to carry out their duties safely, they have identified a controlling issue of law—if the Unions were to prevail on appeal on this theory, there would be no need for further proceedings in this Court—but there is no substantial ground for difference of opinion. In support of this argument, the Unions claim that my holding that the business necessity of determining whether bus operators are able to carry out their duties safely justifies the application of the policy to bus operators is in conflict with *Conroy'* s holding that "a request for a general diagnosis is not a narrowly tailored inquiry into the employee's ability to carry out her job-related functions." [30] The Unions' argument appears to be based on a misreading of the ADA, *Conroy,* and my October 12 Order.

The relevant sections of the ADA, 42 U.S.C. § 12112(d)(4)(A) and (B), read as follows:

agreement among courts outside the Circuit, *see, e.g., SEC v. Credit Bancorp, Ltd.,* 103 F.Supp.2d 223 (S.D.N.Y.2000).

ity, Plaintiffs' Exhibit 57, at 153–55. Defendants challenge the weight of this testimony, noting that Hutchins, who has been employed by the Authority since 1987, did not specifically testify that he saw those conditions disclosed after the ADA came into effect in 1992. But even if no such condition has been disclosed since 1992—an heroic assumption—the fact that such conditions *were* disclosed between 1987 and 1992 would still stand as evidence that the inquiries *may tend* to reveal disabling conditions.

**26.** *German v. Federal Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1398 (S.D.N.Y. 1995).

**27.** Indeed, courts have found that there is no substantial ground for difference of opinion even where an issue is of first impression, *see Flor,* 79 F.3d at 284, or where there is dis-

**28.** *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,* No. MDL 1358, 2005 WL 39918, at *2 (S.D.N.Y. Jan. 6, 2005) (finding no substantial ground for difference of opinion where court's decision was based on "well-settled principles of law" and "substantial case law.").

**29.** The Unions' Memorandum of Law in Support of Cross–Motion for Certification at 3.

**30.** *Conroy,* 333 F.3d at 94. A "general diagnosis" is a brief statement of the condition responsible for the employee's absence; a general diagnosis is to be contrasted with a focused inquiry into the employee's ability to carry out specific duties.

(A) Prohibited examinations and inquiries. A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

(B) Acceptable examinations and inquiries.... A covered entity may make inquiries into the ability of an employee to perform job-related functions.[31]

The Unions have confused these two sections. The language the Unions quote from *Conroy* held that an employer could not justify a request for a general diagnosis under 42 U.S.C. § 12112(d)(4)*(B)*, which makes "acceptable" an employer's "inquiries into the ability of an employee to perform job-related functions."[32] Following *Conroy*, my October 12 Order explicitly held that the Authority's request for a general diagnosis was *not* an inquiry into the ability of an employee to perform job-related functions within the meaning of 42 U.S.C. § 12112(d)(4)(B).[33] However, *Conroy* clearly held that even a general diagnosis requirement *may* be justified under 42 U.S.C. § 12112(d)(4)*(A)*, which makes an exception for inquiries that are "job-related and consistent with business necessity."[34] This provision was the basis for my October 12 Order. There can be no substantial ground for difference of opinion as to this issue.

Insofar as the Unions' argument is that a general diagnosis is not justified under 42 U.S.C. § 12112(d)(4)(A) *with respect to bus operators* by the business necessity of maintaining safety, because a narrower and less intrusive inquiry would be sufficient to determine whether *bus operators* are fit for work, there is more room for difference of opinion, but the issue is still not suitable for certification. My ruling with respect to bus operators was highly fact-specific: in particular, it was dependent on the magnitude of the danger posed by an unfit bus operator, on the extent to which the information revealed by the inquiries was in fact used to detect dangerous conditions, and on the inadequacy of narrower inquiries to detect all conditions that might impair a bus operator's ability to drive. Even if the Court of Appeals were to hold that the inquiries are broader than necessary to determine a *bus operator's* fitness for work, further factual development would still most likely be required to determine whether the inquiries are necessary to determine *other* job titles' fitness for work. Immediate appeal of this issue would not, therefore, necessarily advance the termination of the litigation.[35]

## IV. CONCLUSION

For the foregoing reasons, I hereby certify an interlocutory appeal from the October 12 Order pursuant to 28 U.S.C. § 1292(b). The Clerk of the Court is directed to close these motions [# 45, 49]. The Unions may renew their motion for

---

**31.** 42 U.S.C. § 12112(d)(4).

**32.** 42 U.S.C. § 12112(d)(4)(B).

**33.** *See Transport Workers Union,* 341 F.Supp.2d at 446 n. 67.

**34.** 42 U.S.C. § 12112(d)(4)(A). *See, e.g., Conroy,* 333 F.3d at 101 ("If [the employer] can show that ... it has a reasonable basis for concluding that such employees as a group

pose a genuine health or security risk, and that the general diagnosis requirement allows [it] to decrease that risk effectively, it can satisfy the business necessity exception.").

**35.** Nevertheless, the Court of Appeals is free to rule on that issue if it sees fit, and I note that such a ruling might help the parties to settle the remaining issues in this case, or provide guidance for the Court in further proceedings, if any are necessary.

entry of judgment pursuant to Rule 54(b) in the event that the Court of Appeals declines to accept the interlocutory appeal.

SO ORDERED.