**AMERICAN NATIONAL FIRE INSUR- ANCE CO. and Great American In- surance Co., Plaintiffs,**

v.

**MIRASCO, INC., Defendant.**

**Mirasco, Inc., Plaintiff,**

v.

**American National Fire Insurance Company, Defendant.**

Nos. 99 Civ. 12405(RWS), 00 Civ. 5098(RWS).

United States District Court, S.D. New York.

May 26, 2003.

Kingsley & Kingsley, Hicksville, NY (Harold M. Kingsley, of counsel), for American National Fire Insurance Co.

Haight Gardner Holland & Knight, New York, NY (John M. Toriello, James V. Marks, of counsel), for Mirasco, Inc.

## OPINION

SWEET, District Judge.

American National Fire Insurance Company ("American National") and Great American Insurance Co. ("Great American") (collectively the "Insurers"), the plaintiffs in 99 Civ. 12405 (the "New York Action") and defendants in 00 Civ. 5098 (the "Georgia Action"), have moved for reconsideration of *American Nat'l Fire Ins. Co. v. Mirasco,* 249 F.Supp.2d 303 (S.D.N.Y.2003) (the "Summary Judgment Opinion") or, in the alternative, for certification of the questions for appeal pursuant to 28 U.S.C. § 1292(b). Mirasco, Inc. ("Mirasco"), the defendant in the New York Action and plaintiff in the Georgia Action, has also moved for reconsideration of the Summary Judgment Opinion and for certification of the issues it has presented in this motion if the Insurers' motion for certification is granted. In addition, both parties had earlier moved *in limine,* and the consideration of those motions was postponed until such time as the motions for reconsideration were fully briefed and decided. Therefore, this opinion will also deal with the *in limine* motions.

Because both parties are inappropriately seeking another "bite at the apple" in their motions for reconsideration by presenting the same facts and arguments as were already considered, their motions for re-consideration are denied. In addition, for the following reasons, their motions *in limine* are granted in part and denied in part.

### Prior Proceedings

The parties and prior proceedings have been described in greater detail in the Summary Judgment Opinion, familiarity with which is presumed.

The Insurers filed their *in limine* motion on November 18, 2002. Mirasco filed opposition papers on December 18, 2002, and the Insurers replied on December 20, 2002. Mirasco filed its *in limine* motion on December 30, 2003. The Insurers filed opposition papers on January 24, 2003, and Mirasco replied on February 7, 2003. Oral argument was heard on March 19, 2003. At that time, the parties indicated their intentions to file motions for reconsideration of the Summary Judgment Opinion, which had been issued a little more than a week earlier. As a result, consideration of the *in limine* motions was continued to such time as the motions for reconsideration were determined.

The Summary Judgment Opinion was filed on March 10, 2003. In that opinion, it was concluded that, *inter alia:* (1) the M/V Spero cargo was rejected by the Egyptian government, and (2) the IBP cargo was rejected due to an "embargo," and thus under an applicable exclusion Mirasco was entitled only to return freight for that percentage of the cargo. It was concluded that the only issue left for trial was what percentage, if any, of the Monfort and Excel cargo was rejected for a covered reason.

The Insurers now move for reconsideration of the first conclusion, that the M/V Spero cargo had been rejected by the Egyptian government. Mirasco contests the second conclusion, that the IBP cargo was rejected due to an "embargo" as de-

fined in the ocean marine transportation policy at issue (the "Policy"). Both filed their motions on March 24, 2003. The motions were considered fully submitted on April 23, 2003.

## Discussion

### I. Motions for Reconsideration

#### A. Standard of Review

■ "To succeed on a motion for reargument, the moving party must demonstrate that the court overlooked the controlling decisions or factual matters that were placed before the court in the underlying motion." *Lopez v. Comm'r of Soc. Sec.*, 2002 WL 465298, *1, 2002 U.S. Dist. LEXIS 5091, *1–*2 (S.D.N.Y. March 27, 2002) (quotations and citations omitted); *see also Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir.1995) (motion for reargument "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court").

■ Rule 6.3 is intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y.1988) (citation omitted). The parties may not present new facts or theories at this stage. *Ralph Oldsmobile Inc. v. General Motors Corp.*, 2001 WL 55729, at *2 (S.D.N.Y. Jan.23, 2001) (striking affidavit that was filed in support of motion to reconsider without court's permission); *Primavera Familienstifung v. Askin*, 137 F.Supp.2d 438, 442 (S.D.N.Y.2001) (party may not "advance new facts, issues or arguments not previously presented to the Court") (quoting *Morse/Diesel Inc. v. Fidelity & Deposit Co. of Md.*, 768 F.Supp. 115, 116 (S.D.N.Y.1991)).

■ Rule 6.3 must be narrowly construed and strictly applied so as to avoid duplicative rulings on previously considered issues, and may not be employed as a substitute for appealing a final judgment. *Lopez*, 2002 WL 465298, *1, 2002 U.S. Dist. LEXIS 5091, at *3; *Shamis v. Ambassador Factors*, 187 F.R.D. 148, 151 (S.D.N.Y.1999). The decision to grant or deny the motion rests in the discretion of the district court. *AT&T Corp. v. Community Network Servs. Inc.*, 2000 WL 1174992, at *1 (S.D.N.Y. Aug.18, 2000).

#### B. Insurers' Motion

The Insurers argue that the Summary Judgment Opinion improperly concluded that there were no issues of material fact with regard to whether the Monfort and Excel cargo was rejected and that the Court improperly determined that the Loss of Market Exclusion did not apply.

##### 1. Rejection of the Monfort and Excel Cargo

The Summary Judgment Opinion concluded that the Insurers had failed to establish that there is a dispute of material fact with regard to whether Mirasco's losses on the Monfort and Excel cargo were proximately caused, at least in part, by events covered by the Policy. Left undecided, however, was the factual issue of what percentage of the Monfort and Excel cargo was rejected for a reason covered by the Policy.

■ The Insurers now raise a number of objections to this conclusion. They argue that the Court improperly decided questions of fact, too stringently enforced Local Rule 56.1 and overlooked evidence. These legitimate-sounding complaints, however, fail to deliver and in effect constitute the Insurers' efforts to reargue issues already covered in the fifty-one page Sum-

mary Judgment Opinion and to re-present evidence that has already been considered and found wanting.

First, the Insurers argue that the Court improperly decided a question of fact: namely, whether the Excel and Monfort cargoes were rejected as that term is defined in the Policy. In support of this they first challenge the truthfulness of a survey report, commissioned by them and prepared by Youssef El Manoufy ("El Manoufy"), on which the Court relied in part in concluding that the cargo had been rejected. The Insurers challenged the truthfulness of this report based on the alleged untrustworthiness of El Manoufy. As Mirasco pointed out, the report was not signed by El Manoufy, but by another employee of the surveyor hired by the Insurers, Captain Elbendary ("Elbendary"). Further, the Insurers failed to put forth any evidence contradicting the report's conclusion that "the basic trend" of the Egyptian government was "to reject the liver consignment in any way." The Insurers next, similarly, raise issues about the trustworthiness of the April 15, 1999 certificate of re-export. A similar argument was already rejected in the Summary Judgment Opinion, at n. 5. Finally, the Insurers object to what amounts to the Court's refusal to accept their definition of rejection under Egyptian law: both by the Court's disregard of expert evidence regarding what constitutes a typical "rejection" under Egyptian law and related evidence regarding the fact that the Excel and Monfort cargoes did not follow this pattern. The Court rejected as a matter of law this specific definition of rejection. It was concluded that the language of the Policy was unambiguous and that the scope of coverage was therefore a question of law for the Court to decide. Therefore, these arguments are insufficient to justify reconsideration.

The Insurers also contend that the Court misconstrued Local Rule 56.1 in that it refused to credit the Insurers' conclusory denials of certain facts Mirasco set forth in its 56.1 Statement. Local Rule 56.1 clearly states that the moving party's 56.1 statement "will be deemed to be admitted unless controverted," Rule 56.1(c), and requires that such denials be supported by a specific citation to admissible evidence, Rule 56.1(d). As such, any of Mirasco's 56.1 Statements that the Insurers specifically denied but failed to support such denial with specific evidence, were deemed admitted for purposes of the summary judgment motion. *See* Local Rule 56.1. *See also Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir.2000) ("In the Southern and Eastern Districts of New York, a party opposing a motion for summary judgment *shall* file a short and concise statement of the material facts in dispute accompanied by citation to evidence which would be admissible.") (emphasis in original); *Cooper v. Gottlieb,* No. 95 Civ. 10543(JGK), 2000 WL 1277593, at * 4 (S.D.N.Y. Sept.8, 2000) (holding that a denial without evidence to support the denial is "conclusory" and "wholly inadequate under Local Civil Rule 56.1(d)"); *Wenzhou Wanli Food Co., Ltd., v. Hop Chong Trading Co., Inc.,* No. 98 Civ. 5045(JFK), 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000) (noting that "[u]nsupported allegations will not suffice" in responding to a motion for summary judgment). The Insurers have not put forward any case law to support their assertion that this interpretation of Local Rule 56.1 is in any way out of the ordinary or in any way violates Fed.R.Civ.P. 56. Indeed, they would be hard pressed to do so. *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (parties must "designate 'specific facts showing that there is a genuine issue for trial' "); *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (non-movant required to come forward with concrete evidence from which a reasonable jury could return a verdict in its favor); *Cinema North Corp. v. Plaza at Latham Assocs.*, 867 F.2d 135, 138 (2d Cir.1989) (same).

■ The Insurers now point out the reasons why they claim the assertions should not have been admitted. They did not do so at the time of the motion. "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan*, 214 F.3d at 292 (*citing Downes v. Beach*, 587 F.2d 469, 472 (10th Cir.1978)).

Finally, the Insurers point to "overlooked evidence" in the forms of affidavits from persons who were not eyewitnesses to the relevant incidents and who attempt to set forth the meaning of "rejection" under the Policy by testimony regarding the means by which cargo is typically rejected under Egyptian law. As discussed above, the latter evidence was not relevant, as the Court defined rejection based on the ordinary understanding of the term and did not have to resort to any "expert" opinions therefor. In the absence of any pertinent testimony, it was not necessary to discuss the affidavits.

It should be noted, however, that the Insurers' brief reveals a misunderstanding of the holding of the Summary Judgment Opinion. They state that the opinion should be withdrawn "insofar as it holds that Mirasco's Excel and Monfort cargo was rejected by Egyptian authorities for causes covered by" the Policy. Pls.' Reply Mem. at 9–10. The Summary Judgment Opinion did not hold that the entirety of the Excel and Monfort cargo was rejected for causes covered by the Policy. Indeed,

specifically left open was the issue of what percentage of the cargo was rejected for causes covered by the Policy. The opinion merely held that the cargo had been rejected, and it continues to do so.

### 2. *Loss of Market Exclusion*

The Insurers urge that the Court misinterpreted the case law on which it relied in reaching the conclusion that the loss of market exclusion did not apply. They fail to point out any controlling case law that was not considered, nor do they put forward any facts that were not considered. In short, they disagree with the Court's interpretation of *Boyd Motors v. Employers Ins. of Wausau*, 880 F.2d 270 (10th Cir.1989) and *Nationwide Brokers Inc. v. C & G Trucking Corp.*, No. 87–C–5770, 1988 WL 116827 (N.D.Ill. Oct.21, 1988).

Even were such arguments appropriate on a motion for reconsideration, they would be unavailing. It was held that in light of the lack of evidence that Mirasco lost its customers in Egypt who had already agreed to purchase a good portion of the M/V Spero beef livers, the loss of market exclusion did not apply. The Insurers have failed to come forth with any salient reason to hold otherwise. For these reasons, the Insurers' motion is denied.

### 3. *Attorney's Fees*

■ Mirasco has moved for attorney's fees and costs for the purported vexatious nature of this motion. Had Mirasco not filed a motion, dealt with below, about which similar adjectives may be employed, the request might have had more merit. As it is, the motion is denied.

### C. *Mirasco's Motion*

Mirasco has challenged that part of the Summary Judgment Opinion holding that

the IBP cargo was rejected as a result of a contractually defined "embargo" and therefore the exclusion applied. Mirasco first argues that, as a matter of law, Decree 6 was not an "embargo" as defined under the rejection coverage policy and next that an issue of fact exists with regard to whether Decree 6 was the proximate cause of the rejection of the IBP cargo. Each will be addressed in turn.

### 1. *Embargo*

■ Mirasco urges reconsideration of the legal determination that the term "embargo" in the rejection coverage policy should include Decree 6. Mirasco does not point to any controlling precedents that were overlooked. Instead, it states that the Court failed to consider several facts: (1) that Pam Kobin, the Divisional Assistant Vice–President for Specialty Claims of Great American's Cincinnati, Ohio office, stated that she would "be inclined to agree that this situation was not an embargo [of a ship], but it certainly was a prohibition"; (2) that the Insurers added an endorsement to the policy specifically excluding IBP from the rejection coverage after Mirasco submitted its claims; and (3) that Roger Ablett, the Insurers' underwriter, stated that the exclusion was necessary in order for the Insurers to exclude IBP products in Egypt from the rejection coverage of the Policy.

While Mirasco is correct that none of the these three facts were specifically discussed in the portion of the Summary Judgment Opinion concluding that the Policy's embargo or prohibition exclusion applied to Decree 6, it is not correct that the Court did not take such facts into consideration. Those facts were included in the statement of facts. Further, in light of the finding that the Supreme Court's definition of "embargo" was controlling, the fact that certain witnesses believed differently is not sufficient to raise a material issue of fact.

### 2. *Proximate Cause*

■ Mirasco next argues that no evidence supports the finding that the IBP cargo was rejected because of Decree 6 and, in the alternative, that even if some such evidence was presented, it has raised other, contradictory evidence sufficient to raise a material issue of fact.

The first argument is clearly erroneous. Numerous pieces of evidence support the finding that Decree 6 resulted in the rejection of the IBP cargo. First, Mirasco's letter of March 4, 1999, noted that Decree 6 had been put into place and then stated that because the M/V Spero contained about 1,600 tons of IBP in addition to 1,200 tons of other brands, "we are not able to discharge the other brands as we are not allowed to discharge IBP." A second letter from Mirasco, dated March 22, 1999, explicitly made the connection found by the Court: "the ban on the import of the IBP brand was not lifted ... [and] therefore we will not be able to discharge this brand from the above vessel and it will be reexported." On the same day, Mirasco sent a fax stating similarly that "[a]fter extensive attempts to have the ban on IBP brand product lifted in Egypt to no avail, we are in a position that we must discharge the M/V Spero and ship the IBP beef livers to another destination." Finally, Mirasco's agreement with the ship owners for the return voyage stated that "[u]pon the ship's arrival at Alexandria on [January 23, 1999], the customs authority banned discharging about 1,600 metric tons shipped by an American supplier called IBP." The above evidence all supports the conclusion that the IBP product was rejected because of Decree 6.

■ Next, Mirasco argues that it has at least presented a material issue of fact

with regard to whether the IBP cargo was rejected due to some other reason, *i.e.* that the rejection was a result of an "arbitrary denial of the goods by the Egyptian authorities." This argument was explicitly considered and rejected. It was noted that there was no evidence that the IBP cargo was rejected unless one accepted that it was rejected as a result of Decree 6. Summary Judgment Opinion, at 43–44. Thus, if the cargo were not rejected as a result of Decree 6, Mirasco faced a vacuum of proof to support a finding that the cargo was even rejected, and thus that any of the loss was recoverable under the Policy.

Mirasco now points to the following evidence: (1) the surveyor's report indicating that the "basic trend of the [Egyptian authorities] to reject the consignment in any way"; (2) the charged political atmosphere; (3) the purported inapplicability of Decree 6 under Egyptian law to the cargo of the M/V Spero; and (4) the failure of the Egyptian government to issue rejection certificates specifying the reason for the rejection of the cargo. The last fact does not support Mirasco's contention because, as noted above, the lack of any evidence of rejection of the IBP cargo suggests that Mirasco should not have recovered anything, including the return freight it has already received. The other three facts are insufficient to raise a genuine dispute of material fact with regard to whether the IBP cargo was rejected because of Decree 6. As a result, the motion for reconsideration is denied on both grounds.

### D. *Certification of an Interlocutory Appeal*

Because Mirasco only seeks certification if the Insurers are successful, the Insurers' request will be considered first. The Insurers argue that the Summary Judgment Opinion should be certified because of the issue of whether the Excel and Monfort cargo was rejected should be certified pursuant to 28 U.S.C. § 1292(b).

A district court may certify an interlocutory order for appeal pursuant to § 1292 if it is of the opinion that (1) the order "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion," and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In considering a request for certification, a district court must carefully assess whether each of the three conditions for certification is met. *German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y.1995). The determination of whether § 1292(b) certification is appropriate under the above standards lies largely within the discretion of the district court. *Ferraro v. Sec'y of U.S. Dep't of Health & Human Servs.*, 780 F.Supp. 978, 979 (E.D.N.Y.1992).

Certification is warranted only in "exceptional cases" where early appellate review might "avoid protracted and expensive litigation." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F.Supp. 170, 172 (S.D.N.Y.1987). The efficiency of both the district court and the appellate court are to be weighed, and the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals of the same case. *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir.1991).

In determining whether a controlling question of law exists, the district court should consider whether reversal of the district court's opinion could result in dismissal of the action and whether reversal of the district court's opinion, even though not resulting in dismissal, could

significantly affect the conduct of the action. *Klinghoffer v. SNC Achille Lauro,* 921 F.2d 21, 24–25 (2d Cir.1990); *In re Oxford Health Plans, Inc.,* 182 F.R.D. 51, 54–55 (S.D.N.Y.1998).

· The Insurers raised the issue of certification only peripherally in their first memorandum of law, in a one sentence request on the very last page of the memorandum. They did not address Mirasco's cogent arguments in opposition to such certification and, in fact, based their reply memorandum on the point that issues of fact remained to be put before a jury. This lack of other argument underscores the fact that there is no controlling question of law to which there is a substantial ground for difference of opinion. Finally, an interlocutory appeal will not result materially advance the ultimate termination of the litigation, as any appeal would unduly delay the resolution of this matter.

As a result, the Insurers' motion for certification is denied. Mirasco also had sought certification, but only if the Insurers' motion for certification was granted. Because it is denied, Mirasco does not seek certification and its request therefore need not be addressed.

## II. *In Limine Motions*

In determining the following motions, it is important to note that the only issue remaining to be tried is what percentage of the Monfort and Excel cargo was rejected for a covered reason.

### A. *Insurers' Motion*

The Insurers have moved *in limine* to preclude (1) Mirasco from using in evidence the foreign deposition testimony of Mohamed Ibrahem El Shafy ("El Shafy") on the grounds that it was obtained in violation of Egyptian law, is unreliable and lacks procedural safeguards; and (2) the expert opinion of George W. Stellwag

("Stellwag") as unqualified, untrustworthy and not the proper subject to assist the trier of fact.

### 1. *El Shafy Deposition Testimony*

■ The Insurers first argue that the deposition was not taken in compliance with Egyptian law and therefore cannot be admissible.

Rule 28 of the Federal Rules of Civil Procedure states:

> (b) Depositions may be taken in a foreign country (1) pursuant to any applicable treaty or convention, or (2) pursuant to a letter of request (whether or not captioned a letter rotatory), or (3) on notice before a person authorized to administer oaths in the place where the examination is held, either by the law thereof or by the law of the United States, or (4) before a person commissioned by the court, and a person so commissioned shall have the power by virtue of the commission to administer any necessary oath and take testimony . . . .

Fed.R.Civ.P. 28. Here, upon Mirasco's request, a commissioner was appointed for the purposes of taking and recording El Shafy's oath and testimony in Egypt. Thus, the deposition was in accord with Rule 28.

The Insurers now argue that the deposition is not admissible as former testimony under Federal Rule of Evidence 804(b)(1) because it was not taken "in compliance with law." The Second Circuit has held that a deposition taken abroad pursuant to foreign law, and in conformity with Fed. R.Civ.P. 28, may be so admitted pursuant to Rule 804(b)(1). *United States v. Salim,* 855 F.2d 944 (2d Cir.1988). The Insurers claim, and Mirasco contests, that the deposition was not taken in accord with Egyptian law. Each party has submitted an

affidavit from a witness in support of its position. The Insurers have not, however, cited any case law in support of their contention. By contrast, Mirasco points to a similar case before the Honorable Charles S. Haight, in which two telephonic depositions on non-parties in Egypt were permitted. *E.g., Advani Enters. v. Underwriters at Lloyds,* No. 95 Civ. 4864, 2000 WL 1568255, 2000 U.S. Dist. LEXIS 15421, at *1–2 (S.D.N.Y. Oct. 19, 2000). In light of this ruling and Mirasco's compliance with Rule 28 and United States law regarding depositions, the deposition testimony will not be precluded as purportedly illegal under Egyptian law.

█ The Insurers next argue that the deposition testimony is unreliable because the interpreter was coached not to use the word "embargo" when translating terms used within Decree 6. Pursuant to Fed. R.Evid. 604, an interpreter is "subject to the provisions of these rules relating to the qualification as an expert and the administration of an oath or affirmation to make a true translation." The Insurers object to the translation of testimony that could only be relevant toward the issue of whether Decree 6 is an embargo. Such testimony will not be admitted as it has already been decided as a matter of law that Decree 6 is an embargo or prohibition as those terms are used within the Policy. Next, the translator, Khadiga Barrada ("Barrada"), was well-qualified. Indeed, the Insurers' attorney praised her as one of the best interpreters the attorney had ever observed and asked Barrada to translate for him while he questioned El Shafy, even though he had his own interpreter present. The Insurers' interpreter did not challenge Barrada's qualifications or translations during the deposition and in fact, praised Barrada. Finally, the Insurers agreed to pay half of Barrada's fees. Moreover, Barrada testified that she was not instruct-

ed to translate the Arabic word in question, *"hather,"* in any particular way; instead, she was told "to use whatever word that [she] feel[s]." In light of the above, the Insurers' objections to Barrada's translations are unavailing.

Finally, the Insurers assert that the conduct of Mirasco's attorneys render the El Shafy testimony as unreliable. Fed. R.Civ.P. 30(d)(1) provides that any objection during a deposition must be "stated concisely and in a non-argumentative and non-suggestive manner." Further, a witness may be instructed not to answer "only when necessary to preserve a privilege, to enforce a limitation directed by the court or to present a motion under Rule 30(d)(4)." *Id.*

In support of this argument, the Insurers supplied portions of the deposition transcript involving certain objections and a heated discourse between the attorneys for both sides. While the transcripts reveal that the deposition was vigorously defended by Mirasco, they do not suggest the level of impropriety necessary to justify striking the entire deposition. The motion is therefore denied on these grounds.

█ In their reply papers, the Insurers also raise additional arguments under Fed.R.Evid. 403: that the testimony is prejudicial, lacks probative value and is not reliable. Such arguments should have been made in the original motion and, in any case, are insufficient to justify striking the entire deposition. To the extent the Insurers object to specific portions of the depositions due to, for example, hearsay, prejudice or relevance, they should move to strike those particular portions, rather than include these objections in their reply papers in this motion to strike the entirety of El Shafy's testimony.

The entirety of El Shafy's testimony will not be stricken. Any objections to particular portions of the testimony as raised in

the Insurers' reply memorandum may be dealt with at a later time if the Insurers so move.

### 2. *Stellwag opinion*

■■■ Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. The use of expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991) (*citing United States v. Scop*, 846 F.2d 135, 139–40 (2d Cir.1988); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510–11 (2d Cir.1977)). As a result, an expert's testimony on issues of law is inadmissible. *Id.* An expert may, however, include factual conclusions and opinions embodying legal conclusions that encroach upon the court's duty to instruct upon the law. *Id.*

■■■ Stellwag has more than fifty years' experience in the insurance industry, including experience dealing with re-

jection insurance. He is expected to testify regarding: (1) the nature, scope and coverage contemplated by the rejection insurance; (2) the customs and practices in the cargo insurance industry; and (3) whether the M/V Spero cargo was rejected.[1] Of these issues, the second is clearly relevant and admissible testimony, as experts may testify as to the customary practices in a profession or industry. *E.g. Roniger v. McCall*, 2000 WL 1191078, at *5 (S.D.N.Y. Aug.22, 2000); *Media Sport & Arts v. Kinney Shoe Corp.*, 1999 WL 946354, 1999 U.S. Dist. LEXIS 16035, at *9, 11–12 (S.D.N.Y. Oct. 18, 1999) (excluding expert's conclusion "as impermissibly invad[ing] the province of the jury" but permitting him to testify only as to industry standards). The first and third subjects of testimony impermissibly invade the province of the trier of fact, however, and will not be permitted.

The Insurers in their original motion objected only to anticipated testimony about the meaning of the rejection clause—a topic which is not relevant as it has already been determined that the Excel and Monfort cargo was rejected. In their reply papers, they object to specific portions of the anticipated testimony.

First, they object to Stellwag's opinion that is based on the notion that Decree 6 is not an embargo. The Court has already ruled that Decree 6 is an "embargo" or "prohibition" under the Policy. To the extent that Stellwag's opinion contradicts this finding of law, it is precluded. They also object to Stellwag's analysis of the cause of the political steps taken by Egypt to ban the IBP products. Because the

---

1. Mirasco also offered his testimony as guidance with regard to the meaning of any ambiguous words in the Policy. Because it has already been held that the terms of the Policy are not ambiguous and the specific term "rejection" has already been defined in the Summary Judgment Opinion, it does not appear as though Stellwag's expert opinion is necessary on that matter. In addition, the Insurers' focus their argument on this anticipated testimony.

issue of the ban of the IBP products is no longer at issue, such testimony is not relevant and may be stricken on those grounds.

██ The Insurers interestingly also object to Stellwag's opinion as to the validity of the Rejection Notices. This objection is interesting because they also seek to interpose "expert" evidence as to the *in*validity of the Rejection Notices, and their objections to Stellwag's testimony, in essence, revolve around disputed issues of fact. As determined later, the Insurers may produce expert testimony supporting their contention that the Rejection Notices were invalid, and, similarly, Mirasco may produce expert testimony supporting its contention that the notices were valid. Who the fact finder decides to believe is a question going to the weight of the evidence and not one to be determined at this stage by preclusion of any or all expert witnesses as to the matter. To the extent that Stellwag concludes, however, that the cargo would have been permitted entry into Egypt but for abusive political pressure, his testimony will be precluded as invading the province of the fact finder.

### B. *Mirasco's Motion*

Mirasco has moved *in limine* to preclude the testimony of five witnesses, whom the Insurers intend to call as experts: (1) Bernard Haykel ("Haykel"); (2) James R. Mintert ("Mintert"); (3) Captain Assem Elbendary ("Elbendary"); (4) Ramadan Youssef Mohammed ("Mohammed");[2] and (5) James J. Horan

("Horan"). Mirasco has not at this time opposed the testimony of another four expert witnesses that the Insurers intended to utilize.

### 1. *Haykel*

Haykel, an assistant professor of Middle Eastern Studies and History at New York University, was expected to testify on the language of Decree 6 in order to support the theory that Decree 6 is an embargo within the meaning of the Policy. Because this issue has already been determined based on the unambiguous plain language of the Policy, Haykel's testimony is unnecessary and not relevant to the remaining issues. It therefore will be precluded.

### 2. *Mintert*

Mintert, who teaches agricultural economics at Kansas State University, is expected to testify on issues relevant to the Insurers' loss of market defense.[3] Because that defense has been rejected in the Summary Judgment Opinion and again on reconsideration, Mintert's testimony will be precluded as not relevant to the remaining issues.

### 3. *Elbendary*

██ The testimony of Elbendary, a marine surveyor who is the head of the surveying company hired to survey the M/V Spero cargo at discharge, is offered both in his capacity as an eyewitness and as an expert on the custom and practices in importing frozen beef livers into Egypt.

**2.** The Insurers spell the name of this proposed witness as "Mohamed" in their opposition papers. The spelling used above, "Mohammed" was used by Mirasco and by the Insurers in their disclosure of his testimony and therefore will be used in this opinion.

**3.** Mintert will testify as to the fluctuations in beef liver prices in the United States during 1998–99. He does not offer an opinion as to prices in Egypt during the relevant period. In any case, the price of beef livers is irrelevant to the damages that Mirasco seeks as such award will be based on the certificates of insurance. Once a covered loss is demonstrated, the Insurers are liable to pay the insured value to the bearer of the original insurance certificates.

Much of the disputed testimony appears directed toward issues that have already been decided, *i.e.*, whether the Excel and Monfort cargo was rejected. As such, the testimony is irrelevant and may be precluded. While Elbendary's testimony on the custom and practices in Egypt upon importing frozen beef livers may be relevant, it is cumulative of the expected testimony of Mohammed and therefore superfluous. Moreover, Mohammed has greater experience with the particularities of the import of frozen beef livers and therefore is more qualified to speak to those customs and practices. Elbendary may, however, testify as a fact witness about events as to which he has personal knowledge.

#### 4. *Mohammed*

■ Mohammed, a merchant in frozen beef livers, is expected to testify about the market conditions in Egypt during the relevant period and Egyptian import requirements and practices. Apparently, his testimony is intended to support the Insurers' argument that a rejection did not take place and that Mirasco did not comply with the sue and labor clause. Both arguments have been rejected. As with Mintert's testimony, the price of beef livers in Egypt is totally irrelevant to the remaining issues in the case. To the extent that Mohammed's testimony on the custom and practices of importing frozen beef livers is relevant to the issue of what percentage of the Excel and Monfort cargo was rejected for covered reasons, however, it will be admitted.

#### 5. *Horan*

■ Horan, a forensic document examiner, will testify regarding the purported alterations, additions and changes to the purported Rejection Certificates. Mirasco challenges Horan's qualifications inasmuch as he has not demonstrated a working knowledge of Arabic and also challenges his expected testimony as irrelevant or cumulative of testimony presented by other experts. To the extent that Horan's testimony attempts to translate the marks that he claims were added to the Certificates, such testimony will be precluded. However, he is qualified to testify as to the addition of marks to a document, and such testimony is relevant to support the later anticipated testimony of the Insurers' other witnesses who will testify as to what they believe are changes and alterations to the documents. Therefore, Horan may testify to the limited issue of what marks he believes were added, but not to the issue of what those marks mean.

#### *Conclusion*

For the foregoing reasons, both motions for reconsideration and certification are denied, and the motions *in limine* are granted in part and denied in part. The case is now ripe for trial, and the parties are ordered to attend a pretrial conference on June 4, 2003 for the purposes of setting a trial date.

It is so ordered.