Lee. N. KOEHLER, Petitioner–Appellee,

v.

The BANK OF BERMUDA LIMITED,
Respondent–Appellant.

No. 111, Docket 96–7066.

United States Court of Appeals,
Second Circuit.

Argued Sept. 6, 1996.

Decided Dec. 4, 1996.

Gregor F. Gregorich, New York City (Laurie R. Rockett, Hollyer Brady Smith Troxell Barrett Rockett Hines & Mone L.L.P., of counsel), for Respondent–Appellant.

Paul F. Newhouse, Towson, MD, for Petitioner–Appellee.

Kenneth A. Caruso, New York City (David R. Sahr, Shaw, Pittman, Potts & Trowbridge, Lawrence R. Uhlick, David T. Halvorson, Institute of International Bankers, of counsel), filed a brief on behalf of the Institute of International Bankers as Amicus Curiae.

Before: FEINBERG, CARDAMONE and McLAUGHLIN, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal from an interlocutory order is before us because a district court certified it under 28 U.S.C. § 1292(b) and a motions panel of this Court granted leave to appeal. What seemed at first like a good idea turns out, on further reflection, not to meet the criteria for certification because allowing the appeal will not materially advance the ultimate termination of the underlying litigation. In fact, quite the opposite.

The interlocutory appeal is from an order of the United States District Court for the Southern District of New York (Haight, J.) denying Bank of Bermuda International Ltd.'s motion to dismiss petitioner Lee N. Koehler's garnishment action against it for

lack of personal jurisdiction. We have been asked to decide under what circumstances a federal court may exercise jurisdiction over a foreign corporation on the basis of its wholly-owned subsidiary's presence and activity in New York. We cannot now answer that question because the propriety of our entertaining this interlocutory appeal is a threshold issue that must be resolved first.

A court of appeals has discretion to review an interlocutory order in a civil case if the trial court states in writing that its order involves a controlling question of law about which there is substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). With the benefit of briefs and a record we have had second thoughts about permitting this appeal to proceed. It does not serve § 1292(b)'s intended purpose to rule on an ephemeral question of law that may disappear in the light of a complete and final record. Accordingly, we remand the matter to the district court.

## BACKGROUND

The circumstances that gave rise to this appeal occurred as follows: petitioner-appellee Lee Koehler won a default judgment against A. David Dodwell in the United States District Court for the District of Maryland. With the knowledge that Bank of Bermuda International Ltd. (Bank of Bermuda) had in its possession stock certificates owned by Dodwell—which Bank of Bermuda asserts were pledged to it as collateral for a loan—Koehler registered his judgment in the Southern District of New York and began a garnishment proceeding against Bank of Bermuda, a banking corporation licensed under Bermuda law.

Koehler served a writ of execution on Bank of Bermuda (New York) Ltd. (New York Bank or BBNY), by personally serving an officer of the New York Bank. Bank of Bermuda appeared specially to move to dismiss on the grounds that (1) Bank of Bermuda does not do business in New York within the scope of New York's CPLR 301 and therefore is not subject to the federal court's jurisdiction here and (2) its indirect subsid-

iary the New York Bank is not authorized to accept service of process for Bank of Bermuda.

Koehler contends that BBNY is the agent of Bank of Bermuda in New York under the personal jurisdiction test articulated in *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), and that because the two banking corporations are not separate and distinct entities, the New York Bank is simply a "department" of Bank of Bermuda. To support his contention, Koehler relied on Bank of Bermuda's annual reports to its stockholders and promotional materials which Bank of Bermuda publishes and distributes to its customers and customers of its six subsidiaries, including BBNY. These materials portray Bank of Bermuda and BBNY as part of a unified global banking network that offers customers a wide variety of banking services and a choice of locale in which to have those services performed for optimal financial benefit.

In response to Koehler's assertions regarding jurisdiction, Bank of Bermuda declared that it is a banking corporation organized under Bermuda law, and that it owns no real estate in New York; has no New York telephone number, no office for transaction of business in New York, and no employees in New York; and is not authorized to conduct any banking business in New York. Bank of Bermuda further states that it has a wholly-owned subsidiary, Bermuda (U.S.) Holdings, Inc., a Delaware corporation, which in turn has a wholly-owned subsidiary, BBNY, which does business in New York and is chartered by the State of New York. Bank of Bermuda insists that BBNY is a separate corporate entity—independent from Bank of Bermuda—and is only one of several correspondent banks in New York to which Bank of Bermuda refers its customers for service. Bank of Bermuda customers, it continues, cannot make deposits to their accounts through the New York Bank and that entity cannot make loan commitments or advances on behalf of Bank of Bermuda.

The district court resolved this jurisdictional dispute in a memorandum opinion and order dated February 16, 1994. It denied Bank of Bermuda's cross-motion to dismiss Koehler's garnishment proceeding for lack of personal jurisdiction and found that Bank of Bermuda was doing business in New York through the New York Bank, which was acting as its agent. Upon Bank of Bermuda's motion for reconsideration, the district court narrowly tailored the reargument to address only the question of whether our holding in *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990), undermined its decision with respect to its exercise of personal jurisdiction. The district court reaffirmed its February 16 order and certified the issue for interlocutory appeal. A motions panel of this Court granted leave to appeal by order dated January 23, 1996.

## DISCUSSION

### I   Jurisdictional Issue

■ In a diversity case a federal court may exercise personal jurisdiction over a party in accordance with the law of the forum state. *Marine Midland Bank v. Miller,* 664 F.2d 899, 901 (2d Cir.1981). Here the forum state is New York. Under New York's CPLR 301 a foreign corporation is subject to suit in New York state courts if it is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Frummer,* 19 N.Y.2d at 536, 281 N.Y.S.2d 41, 227 N.E.2d 851. A parent corporation may be sued in New York when the relationship between the foreign parent and the local subsidiary validly suggests the existence of an agency relationship or the parent controls the subsidiary so completely that the subsidiary may be said to be simply a department of the parent. *See Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1334 (E.D.N.Y.1981). These tests require a fact-specific inquiry into the realities of the actual relationship between the parent and subsidiary.

■ The district court made its jurisdictional determination based upon allegations of the parties and affidavits filed in support of their arguments. While the plaintiff bears the ultimate burden of establishing jurisdiction over the defendant by a preponderance of evidence, until discovery takes place, a plaintiff is required only to make a *prima facie* showing by pleadings and affidavits that jurisdiction exists. *Ball,* 902 F.2d at 197. The district court has certified for review its decision that Koehler made a *prima facie* showing of personal jurisdiction over Bank of Bermuda. Nonetheless, at this juncture, the negative resolution of the threshold question regarding the propriety of our entertaining this appeal bars any consideration of the jurisdictional issue presented.

### II   Section 1292(b)

#### A.   *Legislative History and Purpose*

We turn now to an analysis of § 1292(b). That statute allows for an appeal from an otherwise unappealable interlocutory order upon consent of both the district court and the court of appeals:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals ... may thereupon, in its discretion, permit an appeal to be taken from such order....

28 U.S.C. § 1292(b).

■ It is a basic tenet of federal law to delay appellate review until a final judgment has been entered. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1978). Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals. The use of § 1292(b) is reserved for those cases

where an intermediate appeal may avoid protracted litigation. *See Milbert v. Bison Labs.*, 260 F.2d 431, 433–35 (3d Cir.1958) (discussing legislative history of § 1292(b)).

The House Committee on the Judiciary while considering the proposed § 1292(b) listed several types of cases it thought appropriate for interlocutory appeals: (1) where a lengthy accounting is required upon finding liability under a contract; (2) where a long trial is envisioned to determine liability over a defense disputing the right to maintain the action; (3) cases involving third party defendants where there is no reason for the suit to continue if the third parties are out of it; (4) litigation relating to the transfer of an action where it is claimed that the law does not authorize the transfer. *Id.* at 433.

Of the goals set forth in the statute, one scholarly writer believes Congress only aimed to vindicate the final one of saving trial court time by avoiding fruitless litigation. The writer so concluded based on the drafters' language that an interlocutory appeal "materially advance the termination of the litigation," together with the special ability a trial court possesses to assess the efficiency of an immediate appeal. Note, *Interlocutory Appeals in The Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv. L.Rev. 607, 609–11 (1975).

Although the statute represents a slight retreat from the policy of finality and strict enforcement of the final judgment rule, § 1292(b) has not caused a large problem in the federal appellate courts. Professor Wright points out that only about 100 cases a year are certified under § 1292(b), and of these only half are allowed. Charles A. Wright, *Law of Federal Courts*, § 102, at 758 (5th ed. 1994). The public record of the Second Circuit for the years 1994 and 1995 reveals a total for the two years of 35 motions for leave to appeal under § 1292(b), of which only eight were granted.

### B. *Resolution of Certification Question*

██ To comply with the statute requires two steps: first, a trial judge's certification; and, second, an appellate court's grant of leave to appeal the district court's certification. Such a certification comes before a

motions panel of this Court and its grant of leave to appeal is provisional since the merits panel that hears the certified appeal is free to review that subject again. Unlike the motions panel, the merits panel has the benefit of a record and full briefing of the issues certified.

Although asked to review the district court's initial determination of a *prima facie* showing of *in personam* jurisdiction, we conclude that this issue is prematurely before us. Even if we affirm the district court, that court will still need to determine whether Koehler can meet his ultimate burden of showing personal jurisdiction over Bank of Bermuda by a preponderance of the evidence at a later stage of the trial proceedings. If we reverse, Koehler insists we must remand to the district court to permit him discovery. When the question of discovery was raised in the trial court, the court declined to rule on it. Hence, either way we rule, a remand will be required. Moreover, since the exercise of personal jurisdiction over a foreign parent corporation through a resident subsidiary is a question of law which turns on a thorough examination of the facts defining the relationship between the two corporations, we are reluctant to rely on what may turn out to be an incomplete record to clarify legal doctrine for the district court's guidance.

Section 1292(b) vests review of an interlocutory order within our discretion and we may decline at any time to decide the issue presented. We have permitted an appeal to be taken when the interlocutory order involves issues of *in personam* jurisdiction. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir.1990); *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir.1972). Yet, § 1292(b) was not meant to substitute an appellate court's judgment for that of the trial court. In *Link v. Mercedes–Benz of N. America, Inc.*, 550 F.2d 860, 863 (3d Cir.), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), the Third Circuit held that the district court's certification of the class in a class action suit is an inappropriate order for interlocutory appeal because the district court has such broad discretion under Rule 23(c) to revise

its class action determination before a final decision on the merits.

As an exercise of our discretion, we have, on occasion reconsidered an earlier decision to permit appeal from an interlocutory order. *Int'l Soc. for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253, 255 (2d Cir.1984) (per curiam); *Slade v. Shearson, Hammill & Co.*, 517 F.2d 398, 400 (2d Cir.1974). This is one of those occasions. We decline to rule on the important issues raised on this appeal until final judgment has been rendered in the district court. *See Oneida Indian Nation v. County of Oneida*, 622 F.2d 624, 628 (2d Cir.1980) (declining to decide issues that might vanish upon full development of the factual record). Our premature treatment of this issue would risk the development of unsound precedent in an area with great practical implications for the banking industry.

## CONCLUSION

We conclude that certification of the personal jurisdiction question at this initial stage of the proceeding in the absence of discovery and a district court hearing to determine the jurisdictional question by a preponderance of the evidence was improvidently granted. Rather than advancing the cause of saving court time, this premature certification expanded it.

The case is remanded to the district court for it to conduct such further proceedings as are necessary to determine whether Koehler has established personal jurisdiction over Bank of Bermuda by a preponderance of the evidence. The district court is in the best position to decide whether discovery is or is not necessary to reach its decision. *See Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir.1975).

Case remanded without costs to either party.