Graciano **ROCCHIGIANI,** Plaintiff,

v.

**WORLD BOXING COUNCIL, INC.,** Defendant.

**World Boxing Council, Inc., Third–Party Plaintiff,**

v.

**M & M Sports, Inc., Third–Party Defendant.**

**No. 98 CIV. 6781(RO).**

United States District Court, S.D. New York.

March 7, 2001.

Carol A. Dunning, Christine M. Fecko, Ross & Hardies, New York City, for Plaintiff.

Gabriel I. Peñagaricano, World Boxing Council, Inc., San Juan, PR, for Defendant.

### OPINION & ORDER

OWEN, District Judge.

Defendant World Boxing Council moves for "Reconsideration/Reargument" pursuant to Local Civil Rule 6.3 on the ground that this Court's Opinion and Order of February 14, 2001 granting plaintiff Graciano Rocchigiani partial summary judgment with respect to WBC's liability on his contract claim "[o]verlooked dispositive factual matters and controlling decisions."

Reconsideration is discretionary, the relevant factor for today's purposes being the need to correct a clear error or prevent manifest injustice. *See Virgin Atlantic Airways Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992). Reconsideration should be granted only where the moving party demonstrates that the Court has overlooked or misappre-

hended factual matters or controlling decisions that were presented to it on the underlying motion. *See* Local Rule 6.3; *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). This standard is narrowly construed so as to "dissuade repetitive arguments on issues that have already been considered fully by the court." *Caleb & Co. v. E.I. DuPont DeNemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). The WBC may not "advance new facts, issues or arguments not previously presented to the Court." [1] *Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland,* 768 F.Supp. 115, 116 (S.D.N.Y.1991).

This is a contract case and the centerpiece of this courts decision granting partial summary judgment was the conclusion that the March 20, 1998 agreement was a clear and unambiguous, binding contract between the WBC and Rocchigiani concerning the bout which took place on March 21, 1998 between plaintiff and Michael Nunn for *the* WBC Light Heavyweight Title.

I note that WBC actually argued the *opposite* in its original motion papers of what it argues now. It there stated:

> In the case at bar, the Plaintiff correctly argues that the contract between the parties is free from ambiguity. The parties agreement consisted not only of the alleged bout agreement but of the WBC Constitution and Rules and Regulations as well. The bout agreement attached by the Plaintiff provided that "[t]he parties agree to be bound by the Constitution, and Rules and Regulations of the WBC in all matters pertaining to the conduct of this bout and its outcome." [2]

(Def.'s Br. in Response to Pl.'s Mot. for Summ. J. and in Opp. to Def.'s Mot. for Summ. J., at 7–8). Now counsel for the WBC takes the position that the bout agreement was *not* a contract. First, WBC argues that the agreement was not signed by Rocchigiani himself. This contention is wholly without merit. Even WBC concedes that someone from Rocchigiani's "camp" signed the agreement. [3] This would obviously be sufficient to form the contract under basic principles of agency. Further, I am implausibly asked to believe that with the agreement not being binding for lack of Rocchigiani's signature, WBC would have let the Rocchigiani fight proceed anyway even though, by defendant's own admission, Rocchigiani was not bound to the WBC Rules for World Championship Bouts which incorporate by reference the WBC Rules and Regulations and WBC Constitution.

█ The only conclusion, appropriately resolved as a matter of law, is that the document signed by all parties, memorializing the responsibilities and the manner

---

1. The WBC's motion for reconsideration or reargument could or should be denied because defendant submits "new" facts—which clearly could have been presented in the motion for summary judgment—in the Affidavit of Don Majeski. *See* Local Rule 6.3 ("No affidavits shall be filed by any party unless directed by the court."). However, I decline to resort to such formalism because the evidence WBC submits is not newly discovered evidence or competent controlling authority tending to suggest that the March 20, 1998 bout agreement was anything other than a contract.

2. WBC fought vigorously during summary judgment for a ruling that the bout agreement incorporated the WBC Rules and, in turn, that such rules were binding on Rocchigiani. The reason for this argument was that WBC then argued its own rules allowed it vast discretion in classifying bouts. Having rejected that in my Opinion and Order by concluding that the WBC's own rules do not grant it the power to undo that which has already been done, WBC now takes the position that the bout agreement was not a contract at all.

3. Counsel for the WBC so stated this in the telephone conference of March 6, 2001.

of performance and describing the nature of the bout was a contract between the WBC and Rocchigiani in accordance with which performance was actually rendered.[4] The first three lines of the contract state that the fight in question was the "WBC World Championship bout of hightheavy weight ... between ... Graciano Rocchigiani ... [and] Michael Nunn."[5] It says nothing anywhere else with respect to the status of the bout.

Rocchigiani defeated Nunn on March 21, 1998, whereupon in the ring he was presented the World Championship belt by a WBC representative and introduced to the public as world champion.[6] In his declaration, there is a picture of him with his arms raised in victory and the title belt strapped around his waist, iterations of which found their way out to several newspapers including the front page of the *New York Law Journal* of February 20, 2001. The WBC's printed rankings in the subsequent three months list Rocchigiani as the "champion."[7]

Further in this regard, WBC's own President, Jose Sulaimán Chagnon, prior to the fight, stated in a letter dated December 1, 1997, "The World Boxing Council has authorized the fight between Michael Nunn and Graciano Rocchigiani for *the* Lightheavyweight championship ..." (emphasis added). Still prior to the fight, Sulaimán, in a letter a month later on January 8, 1998 lists "[t]he ring officials for *the* Lt. Heavyweight title between Michael Nunn (US) and Graciano Rocchigiani ..." (emphasis added). Sulaimán also sent a fax on January 20, 1998, stating, "The WBC hereby ratifies the sanctioning of the fight between number 1 of the world Michael Nunn vs number 2 of the world

---

4. WBC also proffers all kinds of new facts, through the inappropriate affidavit of Don Majeski, and arguments with respect to the purpose of—what all parties previously called the "bout agreement" and WBC now calls—the "Rules for World Championship Bouts." All of these arguments could and should appropriately have been raised in the briefing on the cross-motions for summary judgment. Notwithstanding that the failure to raise these issues constitutes default, I remain unpersuaded that this new information affects the basic contract analysis of this case. The document, by whatever title and/or frequency with which it is given to boxers, lists in detail the rules for the match (the manner of performance) and the status of the bout in the first line. The parties, their respective obligations and their bargained-for exchange are all specifically identified. Thus, it is ineluctable that the document constitutes a contract considering the existence of a written agreement clearly delineating respective obligations and the presence of consideration.

5. With respect to this contract, I observe that the WBC, on reconsideration, wants to have it both ways, arguing that it is vested with total discretion to classify bouts as a result of the signed "WBC Rules for World Championship Bouts" (previously called by all parties to this litigation the "bout agreement")—which incorporates and makes binding on all parties the WBC Rules and Regulations and the WBC Constitution—but arguing out the other side of its mouth that WBC does not enter into contracts with boxers but only with promoters, and therefore the bout agreement is not a contract. This disregards the sound legal and factual possibility that WBC can be found to have contracted with more than one party. Moreover, if the WBC does not enter into a contract with the boxer, then the very position it seeks to prove would be defeated. The WBC Rules and its untenable position that the organization may act *nunc pro tunc* to reclassify a bout and a title would be invalid because the boxer never contracted to abide by the WBC Rules and *a fortiori* vest WBC with the vast discretion it purports to have.

6. These events are corroborated by the WBC's own Rules and Regulations which provide for the presence of a WBC representative at championship bouts (Rule 1.14) and the procedure by which a WBC representative presents the championship belt (Rule 1.20).

7. *See, e.g.*, Exhibit A (annexed to this memorandum)*.

* [Editor's note: Exhibit A deleted for publication purposes.]

Graziano [sic] Rocchigiani for *the* Lt. Heavyweight WBC world championship ..." (emphasis added). In another fax on January 22, 1998 to Michael Nunn's promoter, Sulaimán states, "The WBC has approved *the championship fight for the Lt. Heavyweight title of the world* between #1 Michael Nunn Vs #2 Graziano [sic] Rocchigiani." (emphasis added). Then in a letter of March 27, 1998, six days after the fight, Sulaimán referred to Rocchigiani as "champion." Similarly in a letter of April 21, 1998, Sulaimán described Rocchigiani as "... the WBC Champion ... [.]"

Given the WBC's unequivocal and repeatedly-stated clear listing of Rocchigiani as champion in the rankings for such a sufficient time, it is beyond any claim of error, or "typographical error," as WBC later claimed, that the organization viewed him as champion. I regard statements by promoters and members of the press and much later contradictions by WBC as of no relevance on the issue of the existence of a clear and unambiguous contract so viewed by both parties.[8] The WBC Minutes purportedly deeming the fight for the interim title, the promotional items and what fight promoters may have said or not are immaterial issues considering the existence of a written agreement. *See Kinek v. Paramount Communications,* 22 F.3d 503, 509 (2d Cir.1994) (holding where terms are unambiguous, any facts about the parties' intent are immaterial).

■ Turning to the issue of compulsory joinder of fighter and current WBC Champion Roy Jones, Jr., I address one contention that WBC raises again in this latest round of motion papers, WBC submits that this action must be dismissed for failure to join Jones and, further, that Rocchigiani concedes or admits that Jones is a necessary and indispensable party. Plaintiff never conceded that Jones is an indispensable party. Despite the fact that I specifically pointed this out to WBC's counsel during a telephone conference on February 22, 2001, defendant's memorandum in support of reconsideration makes the same false claim.[9] In any event, I see no reason at this juncture to conclude that Jones is a necessary and indispensable party. Jones does not need to be present for this Court to determine WBC's liability on Rocchigiani's contract claim. The contract was between Rocchigiani and WBC and defendant breached that agreement. Further, while Jones' indispensability may become an issue in considering what remedy is appropriate to make Rocchigiani whole as a result of WBC's wrong-doing, since certain remedies may affect his interests and others may not, absent a showing that this Court cannot fashion any remedy without Jones' participation—which WBC has failed to make—Jones is not a necessary party because complete relief can be afforded without his presence. *See* Fed. R.Civ.P. 19(a)(1); *Viacom Int'l, Inc. v. Kearney,* 212 F.3d 721, 724 (2d Cir.), *cert. denied sub nom., Taylor Forge Stainless, Inc. v. Viacom Int'l, Inc.,* — U.S. —, 121 S.Ct. 655, 148 L.Ed.2d 558 (2000). Moreover, as Rocchigiani points out, Jones' promoter, M & M Sports, is already a third-party defendant in this action. Jones knows about this case and, at this

---

**8.** Such evidentiary determinations may be made on a motion for summary judgment. *See Howley v. Town of Stratford,* 217 F.3d 141, 155 (2d Cir.2000) (citing *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997) ("[I]t is appropriate for district courts to decide questions regarding admissibility of evidence on summary judgment.")).

**9.** During the February 22, 2001 telephone conference, I directed counsel for the WBC to plaintiff's brief which states, "Without admitting that Jones is an indispensable party to this litigation under Fed.R.Civ.P. 19 ... [.]" Plaintiff's counsel also denied having ever agreed that Jones is an indispensable party.

point, I conclude has had full opportunity to intervene, knowing full well that both sides are in his corner, willing to consent to his intervention. He has chosen not to do so. WBC, therefore, fails to make the threshold showing required by Rule 19 and I need not consider its other arguments with respect to compulsory joinder. *See id.* ("If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)").

Finally, WBC requests that I certify the February 14, 2001 Opinion and Order, an otherwise unappealable interlocutory order pertaining only to WBC's liability, for immediate appeal pursuant to 28 U.S.C. § 1292(b). Piecemeal appeals are generally prohibited unless an interlocutory appeal would "materially advance the termination of the litigation." *Koehler v. Bank of Bermuda,* 101 F.3d 863, 865 (2d Cir.1996) (internal citation omitted). First, the facts here seem to me so clear, and second, in a contract action, the Second Circuit noted in *Koehler* that a district court should only consider certification, *inter alia,* "(1) where a lengthy accounting is required upon finding liability under a contract [and] (2) where a long trial is envisioned to determine liability over a defense disputing the right to maintain the action." *Id.* at 866. Neither of these factors is present here. A preliminary accounting has already been made by the WBC as part of my interim oral order of February 22, 2001 maintaining the status quo by preventing WBC's dissipation of assets and the parties estimate that the trial set for April 30, 2001 will last one week.

Given the foregoing, defendant's motion for reconsideration is denied.

So ordered.