**RYAN, BECK & CO., LLC, Plaintiff,**

v.

**Youssef FAKIH, et al., Defendants.**

**No. 02–CV–4052 (RLM).**

United States District Court,
E.D. New York.

Aug. 6, 2003.

Christopher J. Bebel, Shepherd Smith & Bebel, P.C., Houston, TX, Ariel Berschadsky, Shepherd, Smith & Bebel, P.C., Edward H. Glenn, Jr., Zamanasky & Associates, Stuart D. Meissner, Stuart D. Meissner LLC, New York City, for Defendants.

Joel E. Davidson, New York City, for Plaintiff.

### MEMORANDUM AND ORDER

MANN, United States Magistrate Judge.

By Memorandum and Order dated June 20, 2003,[1] this Court denied the motion of plaintiff Ryan, Beck & Co., LLC ("plaintiff" or "Ryan Beck"), to stay two pending arbitration proceedings brought by defendants Franka Jones ("Jones") and Youssef and Ali Fakih ("the Fakihs"), and directed Ryan Beck to arbitrate the issue of arbitrability with respect to those two groups of investors.[2] Currently pending before this Court is Ryan Beck's motion for permission to appeal this Court's ruling to the United States Court of Appeals for the Second Circuit, pursuant to 28 U.S.C. § 1292(b).[3] The Fakihs oppose the motion. *See generally* Defendant Fakih Memorandum of Law in Opposition to

---

1. *See Ryan, Beck & Co., LLC v. Fakih*, 268 F.Supp.2d 210 (E.D.N.Y.2003). Familiarity with that opinion is assumed.

2. The Court's ruling did, however, stay an arbitration proceeding brought by a third defendant-investor, Perry S. Reich ("Reich"), who was found not to be similarly situated to the Fakihs and Jones. *See Ryan Beck*, 268 F.Supp.2d at 213, 223–30. Discovery in connection with the claims as to Reich is ongoing.

3. The pending application appears to be limited to that aspect of the Court's decision pertaining to the Fakihs and Jones; Ryan Beck does not challenge the Court's ruling as to Reich. *See generally* Plaintiff's Memorandum of Law in Support of its Motion for Permission to Appeal ("Pl.Mem.") at 2; [Plaintiff's] Supplemental Memorandum of Law ("Pl. Supp.Mem.") at 2.

Plaintiff's Motion to Amend the Court's Order ("Def.Mem.").[4] For the reasons that follow, Ryan Beck's application is denied.

### DISCUSSION

"It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir.1996) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). The final judgment rule "generally prohibits piecemeal appeals," *Koehler*, 101 F.3d at 865, and thereby promotes a variety of institutional values underlying our federal judicial system. *See Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F.Supp.2d 139, 148 (E.D.N.Y.1999). The rule "ensures the efficient use of judicial resources" by "prevent[ing] multiple appeals that may ultimately prove unnecessary." *Id.* at 148 (noting that "[m]any issues that a party may seek to appeal before a final decision may become moot upon the disposition of the case on the merits."). Among other things, the final judgment rule also "prevent[s] unnecessary delay or harassment of parties." *Id.* at 151.

Section 1292(b) "was designed to be a rarely used exception to the final judgment rule." *Id.* at 161. The statute allows an appeal from an otherwise unappealable interlocutory order where each of the provision's three prerequisites have been met and both the district court and the court of appeals approve of such an appeal.[5] *See Koehler*, 101 F.3d at 865. As section 1292(b) was not intended "to open the floodgates" to interlocutory appeals, *SEC v. Credit Bancorp, Ltd.*, 103 F.Supp.2d 223, 226 (S.D.N.Y.2000) (quoting *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F.Supp. 170, 172 (S.D.N.Y.1987)), courts have cautioned that "use of this certification procedure should be strictly limited," *Flor v. BOT Fin. Corp.*, 79 F.3d 281, 284 (2d Cir.1996), and that only "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand*, 437 U.S. at 475, 98 S.Ct. 2454; *accord Flor*, 79 F.3d at 284; *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990); *Jacques v. DiMarzio*, 216 F.Supp.2d 139, 145 (E.D.N.Y.2002); *see Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir.1992) ("we urge the district courts to exercise great care in making a § 1292(b) certification."). Simply put, section 1292(b) is a "rare exception" to the final judgment rule, and its use "is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler*, 101 F.3d at 865–66.[6]

---

**4.** Although Jones has not filed any opposition papers, the arguments raised by the Fakihs apply with equal force to her situation.

**5.** That statute provides, in pertinent part:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order....

28 U.S.C. § 1292(b).

**6.** In practice as well as in theory, certification under section 1292(b) has remained a rarely used exception to the final judgment rule. *See Koehler*, 101 F.3d at 866 (noting that only about half of the 100 cases certified annually, nationwide, are allowed, and that, for the years 1994 and 1995, the Second Circuit granted review in only eight of the 35 cases certified by the lower courts); *Nat'l Asbestos*, 71 F.Supp.2d at 161 (noting that, during a recent 10–year period, the Second Circuit

In order to obtain certification under section 1292(b), the party seeking interlocutory appellate review must, "at a minimum," satisfy three statutory criteria. *Nat'l Asbestos,* 71 F.Supp.2d at 162. Specifically, the movant must establish that the challenged order "(1) involves a controlling question of law, (2) about which there is a substantial ground for difference of opinion, and (3) that an immediate appeal would materially advance the ultimate termination of the litigation." *Id.; see* 28 U.S.C. § 1292(b) (quoted *supra* at note 5). Though the statute mandates that trial courts "carefully assess whether each of the three conditions for certification is met," *SEC v. Credit Bancorp.,* 103 F.Supp.2d at 226; *accord Colon ex rel. Molina v. BIC USA, Inc.,* No. 00 CIV. 3666(SAS), 2001 WL 88230, at *1 (S.D.N.Y. Feb.1, 2001), "district court judges retain unfettered discretion to deny certification of an order for interlocutory appeal even where the three legislative criteria of section 1292(b) appear to be met." *Nat'l Asbestos,* 71 F.Supp.2d at 162; *see id.* at 146 ("District courts do have independent and 'unreviewable' authority to deny certification even where the three statutory criteria are met."); *id.* at 161 ("[m]erely satisfying all three of these criteria will not insure an interlocutory appeal."); *id.* at 166; *accord Gulino v. Bd. of Educ.,* 234 F.Supp.2d 324, 325 (S.D.N.Y. 2002); *Jacques,* 216 F.Supp.2d at 145.

In this case, Ryan Beck has failed to satisfy any of the three statutory prerequisites to certification. Even assuming *arguendo* that the decision to refer the issue of arbitrability to the arbitrators presents a pure "question of law," [7] within the meaning of section 1292(b),[8] that legal issue cannot be said to be "controlling": Ryan Beck has made no showing that reversal of the Court's limited ruling would either result in dismissal, "significantly affect the conduct" of the case, or have "precedential value for a large number of cases." *SEC v. Credit Bancorp,* 103 F.Supp.2d at 226 (citing *Klinghoffer,* 921 F.2d at 24–25). Reversal of the June 20th order would merely require the Court to determine the issue of arbitrability; it would not resolve or materially advance the litigation. Consequently, it cannot be said that the challenged order presents a "controlling" issue of law, or that an immediate appeal would "materially advance the ultimate termination" of the case. 28 U.S.C. § 1292(b). *See Koehler,* 101 F.3d at 866 (concluding that the district court erred in granting certification, where the litigation would not be expedited by an immediate appeal: "either way we rule, a remand will be required."); *Colon,* 2001 WL 88230, at *2 (declining to certify issue where appellate decision would affect some but not all claims).[9]

---

agreed to hear only 93 of the 138 interlocutory orders that had been certified).

7. In arguing that the "controlling question of law ... is whether Ryan Beck assumed an obligation to arbitrate with these defendants regarding events occurring prior to the date of the asset acquisition," Pl. Mem. at 2, Ryan Beck misconstrues the nature of the Court's decision: the challenged ruling did not resolve that question but instead referred it to the arbitrators to decide. *See Ryan Beck,* 268 F.Supp.2d at 223.

8. Citing *SEC v. First Jersey Securities, Inc.,* 587 F.Supp. 535, 536 (S.D.N.Y.1984), the Fakihs argue that this Court's decision in-

volves a mixed question of law and fact, which is not appropriate for certification under section 1292(b). *See* Def. Mem. at 2; *see generally Ryan Beck,* 268 F.Supp.2d at 218–20, 223–30 (distinguishing the factual situations of the different investors and referring the issue of arbitrability to the arbitrators in the Fakih and Jones proceedings, while retaining that issue for the Court with respect to Reich).

9. As demonstrated by the foregoing discussion, "[a]lthough technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate

Nor has Ryan Beck sustained its burden as to the remaining element of section 1292(b), which limits discretionary interlocutory review to questions of law "as to which there is substantial ground for difference of opinion...." 28 U.S.C. § 1292(b). Conspicuously absent from Ryan Beck's submissions is any mention of the Second Circuit's recent decision in *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115 (2d Cir.2003), on which this Court relied in finding, on analogous facts, that the parties had evidenced their "clear and unmistakable intent" to submit questions of arbitrability to the arbitrators. *See Ryan Beck*, 268 F.Supp.2d at 220–22. In light of *Shaw*, it is now clearly settled law within the Second Circuit that where, as here, the parties have obligated themselves to a contractual provision that contains sweeping language referring "all disputes" to arbitration, the parties are required to arbitrate issues of arbitrability, even where one of the parties was not a signatory to that contract. *Cf. Martens v. Smith Barney, Inc.*, 238 F.Supp.2d 596, 601–02 (S.D.N.Y.2002) (concluding that "there is no controlling question of law 'as to which there is a substantial ground for difference of opinion'" where the district court's order granting a motion to compel arbitration cited and reached the same conclusion as a Second Circuit decision).[10]

■ In attempting to manufacture a "substantial ground for difference of opinion," Ryan Beck relies on four decisions from outside this circuit, each of which is distinguishable and/or failed to analyze the threshold question of who determines arbitrability. *See* Pl. Mem. at 2.[11] Ryan Beck's

termination of the litigation, in practice the two questions are closely connected." *SEC v. Credit Bancorp*, 103 F.Supp.2d at 227.

10. Contrary to the implications of Ryan Beck's Supplemental Memorandum of Law, the Supreme Court's decision in *Green Tree Financial Corp. v. Bazzle*, —— U.S. ——, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003)—issued three days after this Court's ruling—is in no way inconsistent with the opinion in this case. In *Bazzle*, the Supreme Court observed that, "in the absence of 'clea[r] and unmistakabl[e]' evidence to the contrary," courts assume that the parties intended courts, not arbitrators, to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." 123 S.Ct. at 2407 (quoting *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). This is precisely the legal principle applied by this Court in rendering its decision. *See Ryan Beck*, 268 F.Supp.2d at 219 ("the issue of arbitrability may be referred to the arbitrator if and only if there is clear and unmistakable evidence from the arbitration agreement ... that the parties intended that the question of arbitrability shall be decided by the arbitrator.") (internal quotation marks and citations omitted).

11. In *Prudential Securities, Inc. v. Dusch*, 93–1470–IEG (RBB), 1994 WL 374425 (S.D.Cal. March 28, 1994), the court did not address who determines arbitrability and, in construing the scope of the arbitration clause, erroneously relied on language in a contract to which the investor was not a party. *See Ryan Beck*, 268 F.Supp.2d at 223 (describing the *Dusch* opinion as "of limited precedential value and persuasive force."). In two other cases cited, *Prudential Securities, Inc. v. Bellomo*, No. C–97–0020 SI, 1997 WL 338545, at *2 (N.D.Cal. June 10, 1997), and *Gruntal & Co., Inc. v. Steinberg*, 854 F.Supp. 324, 333 (D.N.J.), *aff'd without op.*, 46 F.3d 1116 (3d Cir.1994), the courts assumed, as a matter of law, without examining the language of the governing arbitration clauses, that a party has a right to a judicial determination of arbitrability. Finally, in *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814 (11th Cir.1993), in contrast to this case (*see Ryan Beck*, 268 F.Supp.2d at 215, 218–19), the broker-dealer plaintiff did not agree to be bound by the customer agreements of the acquired entity (*see* 993 F.2d at 816), and it substantiated its denial that it had *any* arbitration agreement with the defendant-investor. *See id.* at 818–19.

reliance on decisions from outside this circuit is misplaced. "Disagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion." *Colon,* 2001 WL 88230, at *2 (citing *Shah v. Wilco Sys., Inc.,* No. 99 CIV. 12054 AGS, 2000 WL 1876913, at *2 (S.D.N.Y. Dec.22, 2000), and *SEC v. Credit Bancorp,* 103 F.Supp.2d at 227). Moreover, in determining whether "a substantial ground for difference of opinion truly exists, a district court must analyze the strength of the arguments in opposition to the challenged ruling." *Colon,* 2001 WL 88230, at *2. Where, as here, the cases cited are either "inapposite to the issue[ ] implicated by the instant action," *Shah,* 2000 WL 1876913, at *2, of "no persuasive authority," *SEC v. Credit Bancorp,* 103 F.Supp.2d at 228, or both, no substantial ground for difference of opinion exists. Accordingly, Ryan Beck has failed to satisfy any one—let alone all three—of the criteria for certification under section 1292(b).

Finally, even where a party meets all three statutory prerequisites, "the district court must necessarily have the power to consider factors beyond the minimum criteria established in section 1292(b)." *Nat'l Asbestos,* 71 F.Supp.2d at 163. As the Second Circuit observed in *Salim Oleochemicals v. M/V Shropshire,* 278 F.3d 90, 93 (2d Cir.2002), an important policy consideration is the "pro-arbitration tilt" of the governing statute, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* "Unnecessary delay of the arbitral process through appellate review is disfavored." *Salim,* 278 F.3d at 93; *compare* 9 U.S.C. § 16(a) *with id.* § 16(b). For all of these reasons, an interlocutory appeal of the Court's decision is not warranted.

### CONCLUSION

For the foregoing reasons, the Court denies Ryan Beck's motion, pursuant to 28 U.S.C. § 1292(b), for permission to appeal the Court's interlocutory order of June 20, 2003.

**SO ORDERED.**