**Souleymane M'BAYE, Plaintiff,**

v.

**WORLD BOXING ASSOCIATION, Defendant.**

No. 05 Civ. 9581(DC).

United States District Court, S.D. New York.

April 28, 2006.

Judd Burstein, P.C., New York, NY by Judd Burstein, Peter B. Schalk, for Plaintiff.

Smith Alling Lane, P.S., Tacoma. WA by Robert E. Mack, Michael A. McAleenan, McElroy, Deutsch, Mulvaney & Carpenter, LLP, New York, NY by Brian J. Carey, I. Michael Bayda, Jay A. Katz, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Souleymane M'Baye, a professional boxer, brings this action for breach of contract and declaratory relief against defendant the World Boxing Association (the "WBA"). M'Baye alleges that he paid the WBA substantial fees to sanction bouts that resulted in his becoming the "Official Contender" for a boxing championship in his weight class and that the WBA breached an obligation to grant him a championship match because it could make more money sanctioning a fight involving other fighters. Before the Court is the WBA's motion to dismiss for lack of personal jurisdiction and insufficient service of process. For the following reasons, the motion is denied.

### THE FACTS

**A. The WBA and Its Contacts with New York**

The WBA is one of the major sanctioning organizations in professional boxing. (*See* Compl. ¶ 1; Tr. 100:20 [1]). The others are the International Boxing Federation ("IBF"), the World Boxing Council ("WBC"), and the World Boxing Organization ("WBO"). (*Id.*). The WBA ranks boxers in various weight categories, and also sanctions championship and championship-related bouts. (McAleenan Aff. ¶ 5).

[1]. Reference to "Tr." are to the transcript of the hearing held on February 22–23, 2006.

After having gone through many changes through the years, the WBA is now a not-for-profit Pennsylvania corporation with its principal place of business in Venezuela. (Notice of Removal ¶ 8). It is not registered as a foreign corporation doing business in New York, and it does not maintain any office in New York. (Bagnariol Decl. ¶ 11). It does, however, sanction boxing matches that take place in New York. (Bagnariol Decl. ¶ 12). For such matches, the WBA assigns a "supervisor" to attend the weigh-in, the rules committee meeting, and the fight itself to ensure that WBA rules and procedures are followed. (*Id.*). The supervisors assigned to these matches are typically not WBA employees, but rather are independent contractors who are paid by the promoter of the match. (*Id.* ¶ 14). The WBA accepts sanctioning fees for fights that take place in New York, although it does not choose the location of the fight. (*Id.* ¶ 15). The New York State Athletic Commission, however, has enacted regulations that require the WBA to avail itself of certain procedures as a condition[2] of being allowed to sanction championship matches (and, therefore, receive sanctioning fees). Specifically, 19 N.Y.C.R.R. § 215.2 provides:

> In order to sanction a championship bout to be held within the State of New York, a sanctioning body must have filed the following with the commission:
>
> (a) a copy of its constitution and by laws;
>
> (b) the names and addresses of its current officers and directors;
>
> (c) a certified financial statement for its last complete fiscal year, and
>
> (d) its current criteria for ranking boxers in each weight class.

In addition, within ten days after a contract to hold a championship bout in New York has been signed, the WBA is required to file "(a) a statement setting forth all fees and charges (including amounts) that it has or will impose on the boxers and promoters with respect to the championship bout being sanctioned; (b) all contracts it enters into with respect to the championship bout being sanctioned; and (c) an affidavit certifying that other than the fees and charges identified in response to subdivision (a) of this section, neither the sanctioning body, nor any officers or directors have or will receive any payment, compensation or other benefit from promoter(s) or those affiliated with the promoter(s) with respect to the championship bout being sanctioned." 19 N.Y.C.R.R. § 215.4.

The WBA also maintains a website—www.wbaonline.com—on which it lists its president, vice presidents, and other directors under the heading "Directory Members as of June 2005." *See* http://www.wbaonline.com/directory/default.asp. The website lists an individual named Michael Welsh as the WBA's "Audit Director," and gives his address, along with his office phone, cell, and fax numbers. *Id.* His address is listed as 350 Fifth Avenue, New York, New York. *Id.*

In a declaration, Welsh avers that he is a certified public accountant who is employed by Michael Welsh, P.C., in Moorestown, New Jersey. (Welsh Decl. ¶¶ 2–3). He states that he is "affiliated with the private accounting firm of Lazar Levine & Felix," which is located in New York City, but that he is not an employee of Lazar, despite the fact that he has an "of counsel" title. (*Id.* ¶ 4). He also denies being an

---

2. The WBA could not have sanctioned championship bouts in New York without following these procedures. 19 N.Y.C.R.R. § 215.1 provides: "No championship bout may be held in the State of New York except one held in compliance with these rules."

employee of the WBA, but does not deny being a director. (*Id.* ¶ 7).

It is unclear from the record exactly how long the WBA has done business in New York, but its first convention was in New York in 1921, and its third convention was in New York two years later.[3] Through the years the WBA has sanctioned many bouts that have taken place at Madison Square Garden, as its own website touts the Garden as "the Mecca of boxing."[4] More recently, the WBA has sanctioned thirteen bouts in New York in the last five years (out of a total of 226 fights that it has sanctioned worldwide),[5] including bouts at Madison Square Garden between heavyweights John Ruiz and James Toney, Ruiz and Andrew Golota, Ruiz and Fres Oquendo, as well as a bout between middleweights Bernard Hopkins and Felix Trinidad. (Bagnariol Decl. ¶ 16; Schalk Decl. Ex. W).

### B. *Service of Process*

On November 11, 2005, the day after M'Baye's complaint was filed, Jeremy Attie, an associate of the law firm representing M'Baye, personally traveled to the location given for Welsh on the WBA website for the purpose of serving the papers on him. (Attie Decl. ¶ 2). When Attie arrived, he was greeted by Deia Watts, who identified herself as Welsh's receptionist. (*Id.* ¶ 3). There is some dispute as to what happened next: Attie avers that Watts informed him that Welsh was not available but that she was authorized to accept service on his behalf. (*Id.* ¶ 4). Watts states that Attie never informed her that the package contained

legal papers and never asked her whether she was authorized to accept service on Welsh's behalf. (Watts Decl. ¶¶ 12–13). In any event, Attie states that he gave copies of the complaint and summons to Watts, and neither Watts nor Welsh denies receiving them. (Attie Decl. ¶ 4). Later that day Attie mailed a second set of papers to Welsh. (*Id.*).

Welsh states that he is a "volunteer member" of the WBA directorate and that he also performs accounting services for the WBA on a fee basis, but avers that "at no time was [he] an employee, officer, managing or general agent, cashier or assistant cashier of the WBA." (Welsh Decl. ¶¶ 5–7). He avers that he is not authorized to accept process on the WBA's behalf, nor is he authorized to direct anyone else (such as Watts) to accept service on the WBA's behalf. (*Id.* ¶¶ 9–10).

### DISCUSSION

### A. *Applicable Law*

#### 1. *Personal Jurisdiction*

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999) (citation omitted). At the pleadings stage, a plaintiff is required only to make a prima facie showing of jurisdiction. *DiBella v. Hopkins*, 187 F.Supp.2d 192, 198 (S.D.N.Y.2002).

To determine whether it may exercise personal jurisdiction over a non-domiciliary, a district court engages in a two-part

---

**3.** *See* http://www.wbaonline.com/wba/History/WBAhistory.htm (stating that WBA was founded in 1921); http://www.wbaonline.com/wba/presidents/wbapresidents.asp (stating first WBA convention took place in New York in 1921).

**4.** *See* http://www.wbaonline.com/wba/History/WBAhistory.htm

**5.** The yearly breakdown is as follows: four in 2001, zero in 2002, zero in 2003, five in 2004, two in 2005, and, as of February 17, 2006, two in 2006. (Bagnariol Decl. ¶ 16).

analysis. First, the court must determine whether jurisdiction exists under the laws of the forum state (here, New York). Second, the court must determine whether the exercise of jurisdiction under state law satisfies federal due process requirements. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999).

In New York, a foreign corporate defendant may be subject to suit under CPLR § 301,[6] which has been interpreted to permit a court to exercise jurisdiction if the defendant has "engaged in such a continuous and systematic course of 'doing business' ... as to warrant a finding of its 'presence' in th[e] jurisdiction." *Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d 863, 865 (2d Cir.1996) (citation omitted). Sporadic business activity in New York will not meet this standard; rather, "[t]he court must be able to say from the facts that the [defendant] is present in the state not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 77 N.Y.2d 28, 33–34, 563 N.Y.S.2d 739, 565 N.E.2d 488 (1990) (citation omitted).

Solicitation of business is one factor in determining whether a defendant's presence is sufficiently systematic and continuous, but "solicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign ... purveyor of services. On the other hand, if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039,

1043–44 (2d Cir.1990) (quotations omitted). This will necessarily entail a "fact-sensitive determination requiring a balancing of all relevant factual circumstances." *Id.* at 1044.

■ Finally, as noted, any exercise of personal jurisdiction under New York statutes must comport with the requisites of due process. Due process requires that "a non-resident defendant have certain minimum contacts [with the forum] ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 241 F.3d 135, 152 (2d Cir.2001). As a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances than CPLR § 301; therefore, if a foreign defendant engages in a continuous and systematic course of doing business under CPLR § 301, the exercise of personal jurisdiction will satisfy the "minimum contacts" standard required to satisfy due process. *See, e.g., Cave v. Regency Maritime Corp.,* No. 93 Civ. 7780(KMW), 1995 WL 505580, at *3 n. 2 (S.D.N.Y. Aug.24, 1995) ("It is well established that CPLR § 301 ... does not provide for jurisdiction as broad as that of the Due Process Clause.") (citations omitted).

### 2. *Service of Process*

Federal Rule of Civil Procedure 4 states that service of process upon a domestic or foreign corporation shall be effected either by (1) delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process, or (2) pursuant to the law of the state in which the district court

---

6. M'Baye has not contended that the WBA's activities in New York are related to the circumstances of this case. Therefore, CPLR § 302, New York's long-arm statute that permits the exercise of jurisdiction over actions based on transactions in New York, is not applicable.

is located. *See* Fed.R.Civ.P. 4(h)(1) & (e)(1). New York CPLR § 311(a), in turn, provides:

> Personal service upon a corporation ... shall be made by delivering the summons as follows:
>
> (1) upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.

N.Y.C.P.L.R. § 311(a)(1). "When confronted with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(5) for insufficient service of process, the burden to show that service was adequate rests with the plaintiff." *SAT Int'l Corp. v. Great White Fleet (US) Ltd.*, No. 03 Civ. 7481(KNF), 2006 WL 661042, at *15 (S.D.N.Y. Mar.16, 2006) (quoting *C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, No. 04 Civ. 9508(WHP), 2005 WL 2347925, at *3 (S.D.N.Y. Sept.26, 2005)).

■ Courts have held that when a process server "serves someone who does not have express authorization to accept service for a corporation, service is proper under N.Y.C.P.L.R. § 311 if it is made in a manner which, objectively viewed, is calculated to give the corporation fair notice of the suit." *Krape v. PDK Labs Inc.*, 194 F.R.D. 82, 85 (S.D.N.Y.1999) (citation omitted). This standard "is circumstantial and depends on the reasonableness of the process server's actions in serving the complaint." *Kuhlik v. Atl. Corp.*, 112 F.R.D. 146, 148 (S.D.N.Y.1986). A corporation is prevented from "complain[ing] that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of defendant's own employees, and delivered the summons according to their directions." *Id.* (citation omitted).

■ If service is invalid, the Court may dismiss the case or may, in its discretion, retain the case, quash service, and direct that service be effectuated properly. *See Fed. Home Loan Mortgage Corp. v. Dutch Lane Assocs.*, 775 F.Supp. 133, 138 n. 2 (S.D.N.Y.1991) ("[D]ismissal is not mandatory when service of process is improper. Motions under ... Rule 12(b)(5) differ from the other motions permitted by Rule 12(b) somewhat in that they offer the court a course of action other than simply dismissing the case when defendant's defense or objections is sustained.") (citations omitted); *see also* 5B Charles Alan Wright et al., *Federal Practice & Procedure* § 1354 (3d ed. 2004) ("The federal courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on the defendant.... [S]ervice generally will be quashed and the action preserved in those situations in which there is a reasonable prospect that the plaintiff ultimately will be able to serve the defendant properly.").

### B. *Application*

#### 1. *Personal Jurisdiction*

■ The parties agree that the WBA has no offices, employees (Welsh—the "Audit Director"—is not an employee), property, or other physical presence in New York. The question, therefore, is whether the WBA is subject to general jurisdiction in New York based on (1) its history of sanctioning bouts in New York, (2) its filing of papers with the state athletic commission as a condition of being permitted to sanction those bouts, (3) its acceptance of fees for sanctioning those bouts, and (4) its use of observers of the bouts. I conclude that it is.[7]

---

7. Because I conclude that the WBA is subject to suit in New York courts under CPLR

The Court is aware of no case that directly speaks to the issue of a whether a foreign corporation's compliance with the New York State Athletic Commission's registration requirements renders the corporation subject to jurisdiction in New York. In a somewhat analogous situation, New York courts are in general agreement that a foreign corporation submits itself to the jurisdiction of New York courts when it registers to do business within this state under New York Business Corporation Law § 1304 ("BCL § 1304"). As New York courts have explained, "[a] voluntary use of certain State procedures ... is in fact a form of constructive consent to personal jurisdiction which has been found to satisfy due process.... The privilege of doing business in New York is accompanied by an automatic basis for personal jurisdiction." *Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173, 176, 470 N.Y.S.2d 787 (3d Dep't 1983); *see also Speed v. Pelican Resort N.V.*, No. 91 Civ. 7686(SWK), 1992 WL 147646, at *1 (S.D.N.Y. June 16, 1992) ("While a variety of circumstances may constitute the doing of business, it is clear that if a foreign corporation is authorized to do business in this state, a court is justified in inferring that it is doing business so that it is subject to jurisdiction of the courts.") (quotation omitted); *Amalgamet, Inc. v. Ledoux & Co.*, 645 F.Supp. 248, 249 (S.D.N.Y.1986) ("[T]he general rule is that a foreign corporation which files a certificate of authority to do business in New York has consented to personal jurisdiction in the state.").

These cases are somewhat distinguishable on the grounds that BCL § 1304 requires foreign corporations to designate the secretary of state as an agent upon whom process against them may be served, *see* N.Y.B.C.L. § 1304(a)(6), whereas there is no indication here that the WBA has designated such an agent. Nonetheless, I find that their import supports the exercise of jurisdiction in this case. The WBA has been sanctioning bouts (and therefore conducting business) in New York for decades, and it simply would not have been permitted to do so had it not availed itself of the administrative procedures required of it in 19 N.Y.C.R.R. § 215.2. Its voluntary use of these state procedures has enabled it to earn considerable fees. Moreover, the WBA has long had a presence in New York, recognizing that New York City was home of the "Mecca of boxing." It had its convention here in 1921 and 1923 and over the years has regularly sanctioned fights held here. It publicly holds itself out as having a director in New York, listing a New York address and telephone number on its website. It has gained prestige over the years by sanctioning noteworthy bouts in this state. It surely has been present in New York with "a fair measure of permanence and continuity," *Landoil*, 77 N.Y.2d at 33–34, 563 N.Y.S.2d 739, 565 N.E.2d 488, and therefore is subject to the jurisdiction of New York courts under CPLR 301.

The exercise of jurisdiction over the WBA also comports with the requirements of due process. As the "continuous and systematic" test of CPLR § 301 is not as broad as the "minimum contacts" test of the due process clause, the exercise of jurisdiction over a foreign corporation under CPRL § 301 ordinarily comports with due process, and this case presents no exception.

§ 301, I find it unnecessary to address the parties' arguments as to whether the WBA waived its defense of personal jurisdiction.

## 2. Service of Process

Two issues are presented as to the sufficiency of service of process: first, whether service on the WBA could be effectuated by service upon Welsh; and second, if so, whether service upon Welsh could be effectuated by serving Watts, his receptionist.

### a. Whether Service Upon the WBA Can Be Effectuated by Serving Welsh

■ As noted, CPLR § 311 provides that service upon a foreign corporation may be accomplished by serving, *inter alia*, a director of the corporation. N.Y.C.P.L.R. § 311(a)(1). Welsh, in his declaration, avers that he is not an "employee, officer, managing or general agent, cashier or assistant cashier of the WBA." Welsh Decl. ¶ 16. Notably, he does not deny that he is a director. Moreover, the WBA website lists Welsh as the WBA's "Audit Director" on a website under the heading "Directory Members as of June 2005." *See* http://www.wbaonline.com/directory/default.asp. Furthermore, in a declaration filed on behalf of the WBA in November 2005 in opposition to M'Baye's application for a temporary restraining order, Robert Mack, the Legal Director of the WBA, averred that "[t]he WBA's authority lies in its officers, primarily with the President, *and with the Directorate.*" (Mack Aff. ¶ 5). Attached to Mack's declaration is a list of the Directorate, including Welsh. The Court can therefore only reasonably conclude that Welsh is a director of the WBA, and that service upon the WBA was proper if Welsh were properly served.

### b. Whether Welsh's Receptionist Could Accept Service on His Behalf

■ The WBA argues that even if Welsh were a proper representative of the WBA upon whom to serve process, substituted service on his receptionist was not permissible because substituted service under CPLR § 308 is permitted only on a natural person, not a corporation. (WBA Br. at 16).

In *Fashion Page, Ltd. v. Zurich Insurance Co.*, the defendant moved to dismiss the complaint on the basis that the person to whom the summons was delivered was a secretary to the vice-president and not an agent or other person authorized to accept service on behalf of the corporation. 50 N.Y.2d 265, 269, 428 N.Y.S.2d 890, 406 N.E.2d 747 (1980). The Court of Appeals affirmed the lower courts' denial of the motion, explaining that "the purpose of CPLR 311 is to give the corporation notice of the commencement of the suit." *Id.* at 271, 428 N.Y.S.2d 890, 406 N.E.2d 747. The court explained that "the process server cannot be expected to know the corporation's internal practices. Reliance may be based on the corporate employees to identify the proper person to accept service. *In such circumstances, if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained.*" *Id.* at 273, 428 N.Y.S.2d 890, 406 N.E.2d 747 (emphasis added); *see also Kuhlik*, 112 F.R.D. at 148 ("Given some showing of diligence and proper respect for the rules of service, the *Fashion Page* standard prevents a corporation from complaining that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of defendant's own employees, and delivered the summons according to their directions.").

Here, Attie traveled to the address for Welsh given on the WBA's own website and encountered a woman who identified herself as Welsh's receptionist. Although

there is some dispute as to whether Watts told Attie that she was authorized to accept service on Welsh's behalf, there is no dispute that Welsh left the package with someone whom he reasonably believed to be Welsh's receptionist, and that both Welsh and the WBA received the papers and had actual, prompt notice of this lawsuit. Under the exigent circumstances—created because the WBA took nearly a month to decide M'Baye's appeal, leaving him with only eighteen days to challenge the Maussa/Hatton fight in court—Attie's actions were reasonably calculated to deliver to the WBA the notice to which it is entitled.

### CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.

SO ORDERED.